GAIDRY, J.
 

 jp.The plaintiff homeowners appeal a summary judgment in favor of the defendants, an air conditioning cleaning business and its insurer, dismissing an action for personal injury and related damages allegedly caused by the defendant business’s negligent performance of work at the plaintiffs’ residence. We affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 Leroy Thomas and Benay Thomas (plaintiffs), husband and wife, are the owners of a residence in Baton Rouge, Louisiana, which they first occupied in July 2000. In the spring of 2007, because their central air conditioning (HVAC) system had not been used for some time and Mrs. Thomas noticed a slight odor in their home upon activating the system, plaintiffs decided to have the system professionally cleaned. Mrs. Thomas contacted a local representative of Comfort Center of Monroe, LA, Inc., doing business as One Hour Air Conditioning and Heating (One Hour), and its sales representative went to plaintiffs’ home and discussed the work to be performed and the price. Plaintiffs agreed to hire One Hour to perform the cleaning work.
 

 The cleaning procedure was performed on March 26, 2007 by a crew led by David McMillin, a technician employed by One Hour. The cleaning procedure took most of the day. Plaintiffs had been advised that they should stay out of the house during the day the procedure was performed and the following day, so they checked into a hotel for two days.
 

 Upon returning to their home on March 28, 2007, plaintiffs noticed an unusual odor and brought their concerns to the attention of One Hour’s employees. Plaintiffs complained that they experienced dizziness, headaches, and burning in their nasal passages, throats, and eyes. According |ato plaintiffs, the foul smell persisted despite their attempts to eliminate it by following One Hour’s suggestions and after consulting other contractors, and One Hour failed to remedy the situation. Plaintiffs claimed that they were forced to reside at a hotel for months until their entire HVAC system was ultimately replaced.
 

 On December 4, 2007, plaintiffs filed a petition for damages, naming One Hour and its liability insurer, America First Insurance Company (America First), as defendants. Plaintiffs alleged that One Hour negligently used inappropriate chemicals or a combination of inappropriate chemicals to clean the duct work and evaporator
 
 *1232
 
 coils of their air conditioning system; failed to warn them of the inherent dangers of the chemicals and cleaning procedures; negligently failed to use proper cleaning procedures; and was negligent in other unspecified respects. They also alleged that upon returning to their home after One Hour completed the work, they experienced symptoms of “dizziness, headaches, burning of the nasal passages and throat.” Plaintiffs further alleged that because of the persistence of them symptoms while in their home, they were forced to stay at a local hotel at their expense, and also sustained damages for “pain, suffering, anguish, loss of sleep, loss of use of their residence, diminution in value,” and other damages.
 

 America First answered the petition, generally denying its allegations, and affirmatively alleging in defense plaintiffs’ failure to mitigate their damages and that plaintiffs’ symptoms were caused or aggravated by moisture and mold problems unrelated to the work performed by One Hour.
 
 [1]
 

 On March 9, 2009, defendants filed a motion for summary judgment, seeking the dismissal of plaintiffs’ claims on the grounds that plaintiffs |4would not be able to prove that the cleaning process and chemicals used by One Hour caused the symptoms of which they complained. Plaintiffs opposed the motion with various affidavits and deposition excerpts.
 

 Defendants’ motion for summary judgment was fixed for hearing on May 18, 2009. At the conclusion of the hearing, the trial court ruled in favor of defendants, granting the motion and providing oral reasons. It directed defendants’ counsel to circulate and submit a proposed judgment. The summary judgment was eventually signed on July 13, 2009.
 

 On July 15, 2009, plaintiffs filed a motion for new trial, seeking a new trial on the grounds of newly-discovered evidence, verified by Mr. Thomas’s attached affidavit. Defendants opposed the motion, filing opposition affidavits.
 

 Plaintiffs’ motion for new trial was heard on August 24, 2009. After considering the supporting and opposing affidavits and other evidence, the trial court denied the motion. Its judgment to that effect was signed on November 19, 2009.
 

 Plaintiffs have now brought this devolu-tive appeal.
 
 [2]
 

 ASSIGNMENTS OF ERROR
 

 We summarize plaintiffs’ assignments of error as follows:
 

 (1) The trial court erred in rendering summary judgment in favor of defendants, in failing to find that genuine issues of material fact existed, and in failing to apply the correct statutory and jurisprudential standards in its determination of defendants’ motion; and
 

 |s(2) The trial court erred in failing to grant a new trial on the basis of newly discovered material evidence.
 

 
 *1233
 
 DISCUSSION
 

 Preliminary Considerations: Scope of the Appeal
 

 On our review of the record, we note that in their petition for a devolutive appeal, plaintiffs designated the judgment appealed as that denying their motion for new trial, rather than the summary judgment of July 13, 2009. A judgment denying a motion for new trial is an interlocutory judgment and normally unappealable. However, plaintiffs have clearly challenged the original summary judgment on the merits in their first assignment of error, and their petition for appeal expressly states that they seek review of the judgment on the motion for new trial insofar as it provided for the dismissal of their claims with prejudice. It is also the established practice of the appellate courts, as directed by the supreme court, to treat the appeal of the denial of a motion for a new trial as an appeal of the judgment on the merits, when it is clear from the appellant’s brief that he intended to appeal the merits of the case.
 
 Smith v. Hartford Accident & Indem. Co.,
 
 254 La. 341, 347-49, 223 So.2d 826, 828-29 (La.1969);
 
 Carpenter v. Hannan,
 
 01-0467, p. 4 (La.App. 1st Cir.3/28/02), 818 So.2d 226, 228-29,
 
 writ denied,
 
 02-1707 (La.10/25/02), 827 So.2d 1153. Thus, the merits of the summary judgment of July 13, 2009 are properly before us.
 

 Summary Judgment: Standards of Determination and Review
 

 Summary judgment is subject to
 
 de novo
 
 review on appeal, using the same standards applicable to the trial court’s determination of the issues.
 
 Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corp.,
 
 07-2206, p. 5 (La.App. 1st Cir.6/6/08), 992 So.2d 527, 530,
 
 writ denied,
 
 08-1478 (La.10/3/08), 992 So.2d 1018. The summary judgment procedure is | ^expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
 

 The mover has the burden of proof that he is entitled to summary judgment.
 
 See
 
 La. C.C.P. art. 966(C)(2). If the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. La. C.C.P. art. • 966(C)(2). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the mover has put forth supporting proof through affidavits or otherwise, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B).
 

 Causation and the Burden of Proof
 

 Most negligence cases are resolved by employing the duty-risk analysis, which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant’s substandard conduct was a eause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) wheth
 
 *1234
 
 er the defendant’s substandard conduct was a legal cause |7of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was damaged (the damages element).
 
 Hanks v. Entergy Corp.,
 
 06-477, pp. 20-21 (La.12/18/06), 944 So.2d 564, 579.
 

 In a personal injury suit, the plaintiff has the burden of proving by a preponderance of the evidence a causal connection between the injury sustained and the accident which caused the injury. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injury was caused by the accident.
 
 Maranto v. Goodyear Tire & Rubber Co.,
 
 94-2603, 94-2615, p. 3 (La.2/20/95), 650 So.2d 757, 759. Thus, the medical relationship between the accident and the claimed injury, or the issue of medical causation, forms part of the cause-in-fact element of the duty-risk analysis in a personal injury suit.
 

 Defendants’ motion for summary judgment focused upon the absence of factual support for the essential element of medical causation forming part of plaintiffs’ claims. Because all of the general and special damages claimed by plaintiffs are ultimately attributable to the alleged symptoms of chemical exposure, the element of medical causation of such symptoms is essential to their recovery. In support of their motion, defendants filed the affidavits of James F. Wilson, One Hour’s owner and general manager, and William J. George, Ph.D., emeritus professor of pharmacology and toxicology at Tulane University School of Medicine, along with excerpts from the deposition of One Hour’s technician, Mr. McMillin, who performed the cleaning procedure.
 

 |sIn his affidavit, Mr. Wilson described the cleaning procedure used by One Hour as a “point source cleaning method,” commonly used in the United States. The method employs a Rotobrush duct cleaning machine to agitate and remove buildup from the interior of round ductwork and a vacuum machine attachment to the Roto-brush machine for hand-cleaning of duct-work that is not round. Mr. Wilson explained that the Rotobrush machine uses a HEPA filtration system, so that there is no regurgitation of any contaminants back into the home. The cleaning procedure also includes treatment and cleaning of the air conditioning system’s evaporator coil, using a “standard, non-toxic treatment” with three chemical products. The first, Nu-Calgon, is an evaporator coil cleaner used to remove buildup on the coil. The second, Pro-Treat 350, helps to prevent clogging of the drain system, and the third, BBJ, is a disinfectant.
 
 [3]
 
 Mr. Wilson attested that he had been in the HVAC business for twenty years and had never had any prior complaints relating to the “point source cleaning method” or the three chemical products. He further stated that he had never been notified by any manufacturer of health hazards caused by the products used, and that he continued to use them to clean HVAC systems.
 

 In the excerpt from his deposition, Mr. McMillin testified that he could not recall whether the Nu-Calgon product used to clean the evaporator coil was Evap Pow’r-
 
 *1235
 
 C, a concentrated product, or another Nu-Calgon product, but confirmed that it was the standard product used by One Hour. He further testified that he returned to plaintiffs’ home two days after the | flcleaning procedure was performed in response to plaintiffs’ complaints of “an electrical smell or a burning smell.”
 

 After describing his educational and professional qualifications as an expert in the fields of pharmacology and toxicology, Dr. George attested in his affidavit that he had reviewed the deposition testimony of plaintiffs, Mr. Wilson, and Mr. McMillin; the pleadings; and the Material Safety Data Sheets (MSDS) for the three chemical products used by One Hour. Copies of the referenced MSDS were attached to his affidavit. He concluded that the three products were widely used in the HVAC industry and that, to his knowledge, they had never been subject to a product recall or to peer review articles suggesting a link between exposure to them as claimed by plaintiffs and plaintiffs’ reported complaints. Finally, he expressed his opinion that health effects claimed by plaintiffs would not have been caused by the claimed exposure to the three chemical products.
 

 The MSDS for Nu-Calgon Evap Pow’r-RTU, attached to Dr. George’s affidavit, describes the following acute “effects of overexposure” under “health hazard data”: “EYES & SKIN: May cause irritation. INHALATION: Mists may be slightly irritating to upper respiratory tract. INGESTION: Not expected to be harmful if swallowed.” No “chronic” or “subchronic” effects of overexposure were known. Under the section relating to “protection information/control measures,” respiratory protection was described as “[n]ot required,” and “[g]ood general room ventilation” was recommended.
 

 The MSDS for Pro-Treat 350 described it as a “[wjhite tablet,” and indicated under the section for “health hazards” that it is “moderately toxic if ingested” and that “[e]ye contact causes extreme irritation.” It also “[m]ay cause skin irritation in sensitive individuals.” Although Pro-Treat 350 may | incause chemical pneumonitis “[i]f sprayed or misted,” it “is not toxic by inhalation.” Ingestion of this product “may damage throat and digestive tissue.” The MSDS also stated, with regard to “[mjedical [conditions Aggravated by [ejxposure,” that “[cjontact with skin or eyes, or breathing dust can cause eye[,] skin[,] or tissue damage or affect individuals with respiratory disorders.” It was recommended that the product be used “in a well-ventilated area.”
 

 The MSDS for BBJ Mold and Mildew Remediation Concentrate listed no known health hazards from inhalation, but stated that the product “[m]ay be fatal by ingestion,” was “[ijrritating to eyes,” and “[m]ay irritate skin on prolonged contact.” No respiratory protection was required, and there were no special requirements for ventilation.
 

 Considering the proof presented by defendants, the primary question to be determined is whether plaintiffs “set forth specific facts showing that there is a genuine issue for trial” on the essential element of medical causation.
 
 See
 
 La. C.C.P. art. 967(B). In opposition to defendants’ motion and supporting proof, plaintiffs filed their own affidavits, excerpts from their depositions, and the affidavits of Eddie Montz, the owner of another air conditioning and heating service business, and Chris White, a consulting professional engineer.
 

 In his deposition, Mr. Thomas expressed his belief, based upon purported conflicting statements of Mr. Wilson and Mr. McMil-lin, that Mr. McMillin used “the wrong chemical” to clean the evaporator coil. However, he could not identify that chemi
 
 *1236
 
 cal, and conceded that he was “not a heating and air expert.” He discussed statements supposedly made by an unnamed HVAC technician regarding the necessity of replacing the entire system. Mr. Thomas further testified in his deposition that he had no prior diagnosis lnor history of any problems, including pulmonary problems, with susceptibility to chemical exposure.
 

 For the most part, plaintiffs’ affidavits, dated May 1, 2009, simply reiterate the factual allegations of their petition, with some additional history of their dealings with One Hour after the cleaning procedure and the statements in Mr. Montz’s separate affidavit, and therefore add little relevant facts on the issue of causation. In his affidavit, Mr. Thomas recounted the events leading up to and after the cleaning of the HVAC system, as alleged in his petition, including actions undertaken to eliminate carbon monoxide fumes as the source of their symptoms. He also claimed that Mr. McMillin reported feeling “dizzy” and having a “headache” on April 3, 2007, after returning to plaintiffs’ home in an effort to address their complaints. According to Mr. Thomas, Mr. McMillin admitted that he actually used Nu-Calgon Evap Pow’r-C to clean the evaporator coil, rather than Evap Pow’r-RTU, and wrote the name of the former product on the back of a business card provided to Mr. Thomas. Mr. Thomas described work performed by Mr. Montz and certain statements made by Mr. Montz to him regarding his findings. Finally, Mr. Thomas’s affidavit contains his conclusory statements that One Hour’s cleaning of the HVAC system was “negligent” and that he “incurred damages as a result of [its] negligence.” Mrs. Thomas’s affidavit contains the same or similar information as that of her husband and generally corroborates that information, including One Hour’s purported use of Evap Pow’r-C and the conclusory statements regarding One Hour’s alleged negligence.
 

 Louisiana Code of Civil Procedure article 967(A) provides that “[supporting and opposing affidavits shall be made on
 
 personal knowledge,
 
 shall set forth
 
 such facts as would be admissible in evidence,
 
 and shall show | ^affirmatively that the affiant is competent to testify to the matters stated therein.” (Emphasis added.) As our review is
 
 de novo,
 
 we must disregard the hearsay statements attributed to Mr. Montz and the other unidentified HVAC technician in Mr. Thomas’s deposition and affidavit as not within Mr. Thomas’s personal knowledge. Further, plaintiffs’ con-clusory statements and opinions on the issue of negligence in their affidavits may not properly be considered for purposes of summary judgment.
 

 In his affidavit, Mr. Montz testified that he went to plaintiffs’ home on April 6, 2007, and that upon entering the home he “noticed a chemical odor and began to feel dizzy, as if he was getting drunk.” He stated that because the chemical used by One Hour had dried on the evaporator coil, he had to remove it, rinse it off with water, and clean it with a detergent. Mr. Montz further claimed that he also discovered that One Hour used “industrial strength chlorine tablets, rather than residential strength, in cleaning the unit,” and that such was “not the normal procedure.” He also claimed that he found 10 to 12 pieces of such tablets that had not dissolved and that One Hour used “an excessive amount of tablets.”
 

 While Mr. Montz’s affidavit might have raised genuine issue as to the factual issues bearing upon the propriety of One Hour’s cleaning procedure and its alleged negligence, it was insufficient in establishing genuine factual issue as to the causal relationship between One Hour’s cleaning
 
 *1237
 
 procedure and plaintiffs’ reported symptoms. Specifically, Mr. Montz’s affidavit failed to identify or otherwise link the “chemical odor” he experienced with any chemical product used by One Hour or the chlorine tablets he discovered. He did not describe the odor as corresponding to any distinctive odor associated with the coil cleaning chemical, any other chemical, or the 11 s“ chlorine” (presumably Pro-Treat 350) tablets.
 
 [4]
 
 As such, his affidavit failed to provide factual support on the issue of causation sufficient to refute the affirmative showing made by defendants and to defeat summary judgment.
 

 In his affidavit, Mr. White, a consulting professional engineer, affirmed that he was retained by plaintiffs to analyze the air and surfaces in their home. He stated that in June 2007 he obtained an air sample and surface wipe samples from plaintiffs’ home, and in July 2007 obtained wipe samples from the hotel room in which plaintiffs were then residing. After the samples were analyzed, Mr. White advised plaintiffs to “provide the analytical results to their doctors to determine whether the foreign substances found were the cause of their health problems.” Mr. White also stated that he recommended that plaintiffs thoroughly clean their home and its contents, have “soft goods” professionally cleaned, and replace carpet and furniture upholstery. He also recommended that plaintiffs have his engineering group prepare specifications for the performance criteria of the cleaning contractor. Finally, Mr. White stated that he examined the MSDS for the chemical products used by One Hour.
 

 Copies of two letters from Mr. White to Mr. Thomas were attached to his affidavit, together with analytical test reports from another company. The latter documents were not prepared, verified, or explained by Mr. White in his affidavit, so their evidentiary value is suspect. A party may not utilize unsworn and unverified documents as summary judgment evidence.
 
 Sanders v. J. Ray McDermott, Inc.,
 
 03-0064, p. 6 (La.App. 1st Cir.11/7/03), 867 So.2d 771, 775. A document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether there are remaining genuine issues of material fact.
 
 Id.] ASP Enterprises, Inc. v. Guillory,
 
 08-2235, p. 10 (La.App. 1st Cir.9/11/09), 22 So.3d 964, 971,
 
 writ denied,
 
 09-2464 (La.1/29/10), 25 So.3d 834. But even if the contents of the third-party laboratory analytical reports may properly be considered, they simply do not identify which chemical compounds from the air and wipe samples, if any, derived from the chemicals used by One Hour, or any pertinent information as to their toxicity and levels of exposure.
 
 [5]
 
 In summary, Mr. White’s affidavit and its at
 
 *1238
 
 tached documents do not provide relevant information relating to any alleged harmful properties of the chemicals at issue and fail to support a causal link between One Hour’s cleaning procedure and plaintiffs’ reported symptoms and related damages.
 

 Plaintiffs further contend that the evidence they presented in opposition to defendants’ motion was sufficient to give them the benefit of the presumption of causation set forth in
 
 Housley v. Cerise,
 
 579 So.2d 973, 980 (La.1991). In the context of personal injury actions, the
 
 Hous-ley
 
 presumption may be summarized as follows. A plaintiff may be aided in meeting his burden of proof that a claimed injury or medical condition is caused by an accident by a presumption that the injury or condition was caused the accident if he establishes three things: (1) he must prove that he was in good health prior to the accident; (2) he must show that after the 115accident, the symptoms of the claimed injury appeared and continuously manifested themselves; and (3) the medical evidence shows there to be a reasonable possibility of causation between the accident and the claimed injury.
 
 [6]
 

 See Detraz v. Lee,
 
 05-1263, pp. 4-5 (La.1/17/07), 950 So.2d 557, 560, and
 
 Poland v. State Farm Mut. Auto. Ins. Co.,
 
 03-1417, pp. 8-9 (La.App. 1st Cir.6/25/03), 885 So.2d 1144, 1148-49.
 

 Arguably, plaintiffs put forth sufficient evidence to establish
 
 prima facie
 
 proof of the first two elements of the
 
 Housley
 
 presumption. However, our
 
 de novo
 
 review of the record fails to reveal a reasonable possibility of causal connexity between One Hour’s use of the chemicals at issue and plaintiffs’ symptoms based upon medical or scientific evidence. Although the MSDS documents list some potential health effects that broadly resemble some of plaintiffs’ reported symptoms, there was no showing that the factual circumstances of plaintiffs’ alleged exposure corresponded to the types or vehicles of exposure mentioned in the MSDS documents. The
 
 Housley
 
 presumption cannot apply under these facts.
 
 See, e.g., Kelly v. AME Janitorial Services Co.,
 
 09-1167, pp. 3-4 (La.App. 4th Cir.3/3/10), 33 So.3d 358, 360-61.
 

 Plaintiffs additionally invoke the related doctrine of
 
 res ipsa loquitur,
 
 urging that the circumstantial evidence in the record warrants an inference of causation of their symptoms by One Hour’s negligent conduct and the chemical products used. The plaintiff in a negligence case may meet his |1fiburden of proof by presenting both direct and circumstantial evidence.
 
 [7]
 

 Cangelosi v. Our Lady of the Lake Reg’l Med. Ctr.,
 
 564 So.2d 654, 664 (La.1990)(on rehearing).
 
 Res ipsa loqui-tur
 
 is not a substantive legal tenet, but rather an evidentiary doctrine under which a tort claim may be proved by circumstantial evidence.
 
 Broussard v. Voorhies,
 
 06-2306, p. 6 (La.App. 1st Cir.9/19/07), 970 So.2d 1038, 1043,
 
 writ denied,
 
 07-2052 (La.12/14/07), 970 So.2d 535. The doctrine permits the inference of negligence from
 
 *1239
 
 the surrounding circumstances, and merely assists the plaintiff in presenting a
 
 pri-ma facie
 
 case of negligence when direct evidence is not available.
 
 Cangelosi,
 
 564 So.2d at 665.
 

 Because application of
 
 res ipsa loquitur
 
 is an exception to the general rule that negligence is not to be presumed, it should be sparingly applied.
 
 Spott v. Otis Elevator Co.,
 
 601 So.2d 1355, 1362 (La.1992). Generally, it may be applied when three requirements are met: (1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; (2) the defendant had exclusive control over the thing causing the injury; and (3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on the defendant’s part.
 
 Id.
 

 Plaintiffs cannot avail themselves of the benefit of the doctrine of
 
 res ipsa loquitur
 
 to defeat summary judgment, as they have failed to set forth specific disputed material facts as to at least two of the three required elements of the doctrine. With regard to the first element, as defendants 117point out, there was pertinent direct evidence relating to the nature and effects of the chemicals sufficient to negate any circumstantial inference of negligence on defendants’ part. As to the second element, relating to control over the injury-causing instrumentality, plaintiffs failed to establish specific facts tending to establish that the chemicals used by One Hour in fact caused their alleged injuries. At best, plaintiffs’ evidence consisted only of circumstantial or anecdotal evidence suggestive (but not probative) of a causal link between the work performed by One Hour and their claimed symptoms.
 
 [8]
 
 Significantly, no diagnostic medical evidence of chemical exposure was put forth by plaintiffs. Defendants, on the other hand, presented direct evidence, in the form of their toxicological expert’s affidavit, that the chemicals in One Hour’s custody would not have caused the symptoms of which plaintiffs complained. In the absence of specific facts and circumstances from which One Hour’s negligence and a causal link between such negligence and their claimed injuries could reasonably be inferred, plaintiffs cannot defeat summary judgment by relying solely upon applicability of the doctrine of
 
 res ipsa loquitur. See Continental Cas. Co. v. McClure,
 
 313 So.2d 260, 262 n. 2 (La.App. 4th Cir.1975).
 

 In summary, plaintiffs have failed to put forth specific facts that would tend to prove that the chemicals used by One Hour caused the symptoms of which they complained and their consequential damages. For these reasons, we conclude that plaintiffs’ first assignment of error has no merit, and that the trial court did not err in rendering summary judgment on the showing made.
 
 See, e.g., Bradham v. Union Carbide,
 
 07-919, pp. 7-10 118(La.App. 5th Cir.5/27/08), 985 So.2d 846, 850-51,
 
 unit not considered,
 
 08-1956 (La.10/31/08), 994 So.2d 527; and
 
 Alex v. Dr. X,
 
 96-1196, pp. 12-14 (La.App. 3rd Cir.3/5/97), 692 So.2d 499, 506-07.
 

 New Trial
 

 In their second assignment of error, plaintiffs contend that the trial court erred
 
 *1240
 
 in denying their motion for new trial. The stated basis of that motion was plaintiffs’ post-hearing discovery of a One Hour business card upon which Mr. McMillin identified the Nu-Calgon product used as Nu-Calgon Evap Pow’r-C, rather than Evap Pow’r-RTU, and an updated MSDS for Evap Pow’r-RTU, purportedly showing more toxic potential. Because defendants’ expert, Dr. George, based the conclusions of his affidavit on the use of Evap Pow’r-RTU and the older version of its MSDS, plaintiffs argue that the newly discovered evidence warranted the granting of a new trial on the motion for summary judgment.
 

 One of the peremptory grounds for a new trial is “[w]hen the [moving] party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.” La. C.C.P. art. 1972(2). The standard of review of a judgment on a motion for new trial, whether on peremptory or discretionary grounds, is that of abuse of discretion.
 
 Magee v. Pittman,
 
 98-1164, p. 19 (La.App. 1st Cir.5/12/00), 761 So.2d 731, 746,
 
 writ denied,
 
 00-1694 (La.9/22/00), 768 So.2d 31. The breadth of the trial court’s discretion to order a new trial varies with the facts and circumstances of each case.
 
 Norton v. Mayeaux,
 
 05-1704, p. 11 (La.5/30/06), 931 So.2d 338, 344.
 

 To meet his burden of proof on a motion for new trial based upon newly discovered evidence, the mover must show that such evidence (1) is not merely cumulative; (2) would tend to change the result of the case; (3) |19was discovered after trial; and (4) could not, with due diligence, have been obtained before or during trial.
 
 Couvillion v. Shelter Mut. Ins. Co.,
 
 95-1186, p. 7 (La.App. 1st Cir.4/4/96), 672 So.2d 277, 282-83.
 

 The information related to the use of Nu-Calgon Evap Pow’r-C and Mr. McMillin’s writing of that product’s name on his business card was not new information, as plaintiffs had previously attested to that same information in their affidavits in opposition to the motion for summary judgment. The post-hearing location of the business card itself therefore added nothing new to the facts originally placed before the trial court for the hearing on the motion for summary judgment, and thus the business card constituted merely cumulative evidence. Plaintiffs were not entitled to a new trial solely on the basis of their discovery of the card itself, which was already known to exist. Additionally, in both of their affidavits opposing summary judgment, plaintiffs emphasized their factual contention that Evap Pow’r-C was used, rather than Evap Pow’r-RTU. Thus, such information was not newly discovered evidence, and plaintiffs made no showing that the MSDS for Evap Pow’r-C (attached to their motion for new trial) was unavailable to them before or during the trial.
 

 Plaintiffs’ strongest argument in favor of a new trial was the evidence relating to the 2008 revised MSDS for Nu-Calgon Evap Pow’r-RTU.
 
 [9]
 
 As emphasized by plaintiffs, the revised MSDS does
 
 *1241
 
 set forth some differences and more detail regarding potential health hazards and “exposure controls/personal protection” than does the older 2006 MSDS. For example, |2pthe revised MSDS cautions that ingestion “[m]ay cause stomach distress, nausea, or vomiting,” a significant change from the 2006 MSDS. The revised MSDS also warns that
 
 “[ejxcessive intentional
 
 inhalation may cause respiratory tract irritation and central nervous system effects (headache, dizziness)” and that “[sjymp-toms of overexposure may be headache, dizziness, tiredness, nausea and vomiting.” (Emphasis added.)
 

 Defendants emphasize that there is no evidence of either ingestion or excessive intentional inhalation of the product by plaintiffs, and that both the 2006 MSDS and the revised 2008 MSDS categorize the health hazard rating of Evap Pow’r-RTU as “1” (“slight”), on a scale of “0” (“minimal”) to “4” (“severe”). More importantly, defendants submitted an excerpt from Mr. McMillin’s deposition, in which he confirmed that the Nu-Calgon product is diluted with water prior to being sprayed on the evaporator coil, and that in this particular job the application of the product was then followed by a water rinse. Defendants submitted another affidavit of their expert, Dr. George, in which he emphasized the diluted nature of the product. Dr. George also pointed out that Evap Pow’r-C had the same health hazard rating of “1” (“slight”) as Evap Pow’r-RTU, posing a possible risk of only minor and transient effects. He concluded that even if Evap Pow’r-C (the concentrated product) was the product used, his prior opinion that plaintiffs’ symptoms would not have been caused by the product did not change.
 

 Even if plaintiffs’ evidence was newly discovered, it would not have served to change the result. Under the circumstances, we cannot conclude that the trial court abused its discretion in denying plaintiffs’ motion for new trial. Plaintiffs’ second assignment of error has no merit.
 

 121DECREE
 

 The summary judgment of the trial court in favor of the defendants, Comfort Center of Monroe, LA, Inc., and America First Insurance Company, and against the plaintiffs, Leroy Thomas and Benay Thomas, dismissing the plaintiffs’ causes of action and claims with prejudice, is affirmed. The judgment denying plaintiffs’ motion for new trial is also affirmed. All costs of this appeal are assessed to the plaintiffs.
 

 MOTION TO STRIKE REPLY BRIEF DENIED; AFFIRMED.
 

 [1]
 

 . No answer by One Hour appears in the record.
 

 [2]
 

 . Defendants have filed a motion to strike plaintiffs’ reply brief, with an alternate motion for leave to file a supplemental brief on their own behalf, on the grounds that plaintiffs’ reply brief raised, for the first time, the applicability of
 
 res ipsa loquitur
 
 to defeat summary judgment. Because that doctrine is an
 
 evidentiary
 
 doctrine relating to circumstantial evidence, rather than a doctrine of substantive law, we conclude that defendants will suffer no substantial prejudice by our consideration of plaintiffs’ argument in the context of this matter. Accordingly, we deny defendants’ motions.
 

 [3]
 

 . Other evidence and testimony in the record uniformly confirm that the actual product name for the coil cleaner was either Evap Pow’r-RTU (a diluted product) or Evap Pow'r-C (a concentrated product), and that the manufacturer or distributor of those two related products was Nu-Calgon Wholesaler, Inc. The full name of the BBJ product was BBJ Mold and Mildew Remediation Concentrate, manufactured by BBJ Environmental Solutions, Inc.
 

 [4]
 

 . Mr. Montz's affidavit refers to pieces of the tablets as "not totally dissolved,” suggesting that they were placed in water. The excerpts from Mr. Thomas’s deposition confirm that the tablets were recovered by Mr. Montz from the drain pan of the HVAC system. If the tablets were immersed in water, they could not produce the "dust” that might "affect individuals with respiratory disorders,” as stated in the MSDS for Pro-Treat 350.
 

 [5]
 

 . For example, Mr. White’s letter relating to the air sample states that a number of chemical compounds were detected, including ethanol and xylene, but only one, "xylene (para & meta),” is actually listed on the laboratory analysis summary as "detected at reported concentration in ppbv and ug/m3.” The MSDS for Nu-Calgon Evap Pow’r-RTU lists "# 2-butoxyethanol” and "sodium xylene sul-fonate” among its potentially hazardous ingredients, but neither Mr. White’s affidavit, the attached letter, nor the laboratory analysis summary identifies any compounds detected with those ingredients.
 

 [6]
 

 . The presumption as originally articulated in the
 
 Housley
 
 opinion was worded in terms of "disability,” rather than simply injury, because the presumption developed in workers’ compensation cases, and a compensation claimant is only entitled to benefits in the event of disability for work. The presumption was only later extended to delictual actions for personal injury, including non-disabling injury.
 
 See Detraz v. Lee,
 
 05-1263, p. 5 n. 2 (La.1/17/07), 950 So.2d 557, 560 n. 2.
 

 [7]
 

 . Evidence is either direct or circumstantial. Direct evidence is evidence that, if believed, proves a fact. Circumstantial or indirect evidence is evidence that, if believed, proves a fact from which one may logically and reasonably conclude that another fact exists.
 
 Indep. Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181, 99-2257, p. 18 n. 6 (La.2/29/00), 755 So.2d 226, 236 n. 6.
 

 [8]
 

 . The vague reported symptoms that plaintiffs attributed to Mr. McMillin and Mr. Montz were also not linked to any chemical exposure, let alone the chemicals at issue, by any medical or scientific evidence. Thus, the evidence relating to the claimed symptoms of Mr. McMillin and Mr. Montz was insufficient to satisfy plaintiffs’ burden of proof and to defeat summary judgment.
 
 See Landreneau v. Copeland’s Cheese Cake Bistro, L.L.C.,
 
 08-647, pp. 5-7 (La.App. 5th Cir. 1/13/09), 7 So.3d 703, 706-07.
 

 [9]
 

 . The MSDS for Evap Pow’r-C and the revised MSDS for Evap Pow’r-RTU were neither certified nor attached to Mr. Thomas’s affidavit submitted with his motion for new trial, and thus could not ordinarily be considered, but for the fact that both were attached to and identified in the opposition affidavit of defendants' expert, Dr. George. Under these circumstances, where both parties agree as to the contents of the documents and submit them for the court's consideration, the documents may be considered the subject of a stipulation or joint admission. See,
 
 e.g., Boland v. West Feliciana Parish Police Jury,
 
 03-1297, p. 6 (La.App. 1st Cir.6/25/04), 878 So.2d 808, 814,
 
 writ denied,
 
 04-2286 (La. 11/24/04), 888 So.2d 231.