CLARENCE E. McMANUS, Judge.
| ¡¡Plaintiffs, Gertrude Hurt and Charles Stoll III filed suit against Charles Fury and his motor vehicle liability insurer and Hurt’s uninsured/underinsured motorist liability insurer for damages allegedly sustained in a car accident. The matter was heard at a two day trial before a jury. At the end the plaintiffs’ case, counsel’s motion for a directed verdict in favor of plaintiffs on the issue of liability was granted. At the conclusion of trial the issue of damages was presented to the jury who found that plaintiff incurred damages of $0.00 as a result of the accident. In accordance with the jury’s findings, the trial court rendered judgment in favor of defendants, dismissing plaintiffs’ suit with prejudice. Thereafter, plaintiffs filed motions for new trial, additur or judgment notwithstanding the verdict, which were denied by the trial court. This appeal followed.
THE ACCIDENT
The accident at issue occurred on May 8, 2007 at the intersection of Ames and La-palco Boulevards in Marerro, Louisiana. Ms. Hurt was driving her vehicle with Mr. Stoll as a guest passenger. Ms. Hurt stopped at the intersection, and waited for traffic to clear so that she could execute a right hand turn. Mr. Fury was in the vehicle directly behind Ms. Hurt, in a standard transmission pickup truck. He testified that as he turned his head to view traffic coming behind them, his foot |4slipped off the clutch and his truck rolled into Ms. Hurt’s car. Both parties moved their vehicles off the roadway and the police were called.
Ms. Hurt testified that she did not see Fury’s truck prior to the impact. She stated that the impact was hard, and that it caused her to rise off of her seat. She also further testified that her car was not damaged before the impact. After the impact, her trunk was buckled and her bumper was damaged. She had the car repaired at Allstate Collision Center. The final repair bill was $2332.17.
After the collision, Mr. Stoll called the police and an officer arrived 20-30 minutes later. The officer spoke to her and to Mr. Fury, and then Mr. Stoll walked with him over to' where the accident occurred to describe how it happened.
Mr. Stoll also testified that the impact was hard enough to lift him off his seat, and that the top of his head hit the top of the car. Mr. Stoll also testified that he walked over to the scene of the accident with the investigating officer.
Mr. Fury testified that immediately pri- or to the accident he was looking at plaintiffs bumper, and he noticed that it was torn and that the K in B-U-I-C-k was missing. He then turned his head to check the traffic and at that time his foot slipped off of the clutch. Mr. Fury also testified that he did not see Mr. Stoll walked over to the scene of the accident with the investigating officer.
Officer William Hotard testified that he investigated the accident. There were no complaints of injuries and he saw only minor damage to plaintiffs car and no damage to defendant’s truck. His report indicated that he spoke to Ms. Hurt and to Mr. Fury, but there was no indication that he spoke to Mr. Stoll.
All parties admitted that Ms. Hurt and Mr. Stoll did nothing to cause the accident. Neither party reported injury at the scene, nor was an ambulance called.
JjMEDICALS — MS. HURT
The plaintiffs have been in a relationship for 7 years, and they resided in the same house. Mr. Stoll did not drive, as he suffered from epilepsy. Accordingly, they tried to schedule their appointments at the *1092 same time, so that Ms. Hurt could transport them both.
Ms. Hurt testified that immediately after the accident she felt shaken up. The next morning she woke up in pain, and she went to see her primary care physician, Dr. Libby Ellent. Ms. Hurt stated that she had a headache, her neck hurt and her back hurt. Dr. Ellent sent her for an X-ray and prescribed muscle relaxers. The x-ray was taken the next day, May 9th, and showed no abnormalities. Ms. Hurt also testified that despite being raised off her seat during the accident impact, she suffered no bruising where her seat belt had been.
Within the next two weeks, Ms. Hurt was referred to Dr. Michael Chambers, by her attorney. She treated with Dr. Chambers for the next 8 months. At trial, Dr. Michael Chambers was qualified as an expert in general practice medicine. He testified that he specialized in people that had been injured in accidents, and that many of his clients were involved in litigation. He first saw Ms. Hurt on May 21, 2008, three weeks after the accident. At this time, she had already been seen by an emergency room physician and her primary care physician. On her first visit, she complained of bilateral neck pain, upper and lower back pain, kidney pain, and anxiety. On examination, she complained of moderate to severe pain on range of movement and exhibited evidence of muscle spasms. He diagnosed cervical strain, lumbar strain, and post traumatic headaches. At this time he recommended treatment two to three times weekly consisting of moist heat, electrical muscle stimulation and ultrasound massage.
|fiDespite treatment, four months post accident, Ms. Hurt still reported severe pain. On examination Dr. Chambers found only some muscle tenderness. He referred her for an MRI. The MRI showed a possible contained subligamentous herniation at L3 — 1, L4-5, and L5-S1. These results matched her description of pain. He stated that while many people had bulging discs, a herniation would mostly likely result from trauma. He further stated that the only trauma that he was made aware of was the May 7, 2008 automobile accident. In October of 2008, he recommended that she consult a neurosurgeon. In December of 2008, Ms. Hurt reported that she had seen Dr. Bradley Bartholomew, a neurosurgeon.
Ms. Hurt’s last visit to Dr. Chambers was on January 21, 2009, and which time she requested that she be discharged from his care. Dr. Chambers stated that at that time, he had exhausted all of his treatment options and nothing else to offer her. In his opinion, Ms. Hurt was not exaggerating or speaking mistruths about her symptoms. Dr. Chambers further stated that he was aware that she had a law suit pending.
In December of 2008, Ms. Hurt was referred by her attorney to Dr. Bradley Bartholomew, a neurosurgeon. At trial, Dr. Bradley Bartholomew was qualified as an expert in neurosurgery. He testified that he first saw Ms. Hurt on December 8, 2008. She complained of constant back pain, a heavy feeling in both legs with occasional numbness, neck pain and occasional headaches. Strength, sensory feeling and reflexes in her arms and legs were normal. The straight leg test, which tests possible herniated discs in the lumbar spine foramen was normal. He felt no spasms in her back or neck, but he noted tenderness in the neck and lower back at the L4-5, L5-S1 levels. She had loss of motion extensions because of her complaints of pain. In her history, Ms. Hurt related to him that she had been in an automobile accident on May 7th. He further related that she stated no previous *1093 17issues with her neck or back. Dr. Bartholomew also reviewed the MRI that had been taken. His findings were that she had multiple abnormalities, any or all of which could have been contributing to her pain.
As Dr. Bartholomew explained, Ms. Hurt was complaining of lumbar pain, and there were abnormalities on the MRI. Her pain could be caused by any of the following; the discs, the facet joints or muscle sprain or strain. He recommended a facet block, which was performed on August 9, 2009. Dr. Bartholomew next saw Ms. Hurt on September 1, 2009 and she reported that that facet block had given about 25% relief, for only two or three days. Accordingly, he could rule that out as a source of pain. A disco gram was not performed, as Ms. Hurt indicated she was not willing to undergo surgery in the event the results were positive.
Dr. Bartholomew next saw Ms. Hurt on October 14, 2010, slightly over one year later. At that time, she complained of back pain more than neck pain. Ms. Hurt had obtained no treatment for her back during the interim. At this point, Dr. Bartholomew would recommend treatment for chronic back strain. Without treatment, Ms. Hurt would suffer chronic pain, but with treatment, the pain should decrease to a bearable level. Dr. Bartholomew also stated that the next step would be a discogram, however because of her weight she would have to undergo a medical examination for health risks before the test could be performed.
At trial, it was also discussed that Ms. Hurt suffered from polycystic kidney disease and that she had a Tarlov cyst on her spine. Dr. Bartholomew opined that these were incidental findings.
Ms. Hurt testifies that at the time of trial, her back continues to be painful all the time; however she takes only Ibuprofen because she does not want to get addicted to pain killers. She further testified that she goes to work, but does not do anything else. She is no longer able to clean house, go to the grocery store, go to IsParades or dance with Mr. Stoll, and cannot stand for more than 30 minutes at a time.
Ms. Hurt also introduced evidence to show that she had incurred $13,198.00 in medical bills up until the time of trial. The amount of these bills was not disputed by defendants.
MEDICALS — MR. STOLL
Charles Stoll testified that he was diagnosed with epilepsy at age 11. The medications for his epilepsy would make him drowsy and cause memory loss, and therefore he was unable to work and he did not drive. Prior to the accident, he had suffered a prior ankle injury for which he had surgery.
Mr. Stoll stated that two days after the accident, he went to the West Jefferson General Hospital Emergency Room with complaints of pain in his neck, back and left extremities. At that time a CT scan was done. He also testified that despite being lifted off his seat when the accident occurred to the degree that he banged his head on the car interior ceiling, he had not suffered any bruising where his seatbelt had been.
On recommendation of his attorney, Mr. Stoll sought treatment with Dr. Chambers. Dr. Chambers stated that he first saw Mr. Stoll on May 21, 2008. At that time he complained of headaches, pain in his left upper jaw, shoulders, back, ribs, left ankle and groin and testicles. His responses on examination ranged from mild to severe pain. Dr. Chambers recommended treatment with moist heat, electric muscle stimulation and ultrasound massages. He also prescribed Lasix, micro K, Vicodin and *1094 Flexeril. By his fourth visit, Mr. Stoll was no longer exhibiting muscle spasms. By August, he complained of pain in his shoulders, neck and back; all other symptoms had resolved.
| ¡After treatment proved to be unsuccessful in relieving Mr. Stoll’s pain, Dr. Chambers ordered a lumbar MRI. The results showed a protrusion at L5-S1. The results also revealed a subligamentous herniation of L2-3. Because of a lack of injury in Mr. Stoll’s history, he opined that these findings were caused by the automobile accident. There were other findings consistent with degenerative disc disease. Subsequently, Mr. Stoll also requested that he be discharged from care after he began treatment with Dr. Bartholomew.
Dr. Chambers stated that he did not believe that Mr. Stoll was exaggerating his symptoms and he did not find him to be a malingerer. On cross-examination, Dr. Chambers stated that Mr. Stoll did not mention his epilepsy and did not relate having struck his head during the accident.
Dr. Bartholomew stated that he first saw Mr. Stoll on December 4, 2008. At this visit he complained of low back pain with sporadic pain down his left leg and ankle, and neck pain with sporadic pain down his left bicep. Mr. Stoll did relate that he was an epileptic, however he did not tell of his prior ankle surgery. Dr. Bartholomew stated that, based on Stoll’s history as related to him, Stoll’s complaints were legitimate and related to the accident. Dr. Bartholomew further noted that some of the abnormalities in the MRI were degenerative, which the accident caused to accelerate. Mr. Stoll also underwent a facet block on August 19, 2009, however it failed to relieve any of his symptoms.
As with Ms. Hurt, due to Mr. Stoll’s continued complaints of pain, the next step would be the discogram and possible surgery. And as with Ms. Hurt, because of Mr. Stoll’s size, a medical examination for health risks would have to be performed. At the time of trial, Dr. Bartholomew recommended treatment for chronic back pain.
11ftDr. Jameson a neurologist, testified that she treats Mr. Stoll for his epilepsy, and usually sees him every six months. She saw him in September of 2007, pre-accident, at which time he exhibited symptoms of depression. She next saw him in September of 2008, at which time he again seemed depressed. He did not report being in a car accident, or hitting his head, to her at that time. On his next visit, in February of 2009, he told her about the car accident and his treatment with Dr. Bartholomew. Dr. Jameson reported no exacerbation of his epileptic condition as a result of the accident.
Mr. Stoll testified that as of the time of trial, he could not do many of the things he used to be able to do or that they would take him considerably longer. He further testified that as a result of his years of medication due to his epilepsy, he has a high tolerance to medications and therefore the pain medications do not work well.
Mr. Stoll also introduced evidence at trial to show that he incurred medical bills of $19,544.00 in connection with his treatment. The amount was not disputed by defendants.
DISCUSSION
In this appeal, the plaintiffs allege that the jury committed manifest error in failing to award damages in light of the directed verdict of liability and in the absence of any controverting evidence that plaintiffs’ injuries were the result of the accident. Plaintiffs further allege that the trial court erred in failing to grant their motions for new trial, or judgment notwithstanding the verdict, or an additur awarding damages to the plaintiffs.
*1095 Our standard of review in this matter is governed by the following:
A court of appeal may not set aside a trial court’s findings of fact in the absence of manifest error or unless they are clearly wrong. Under the manifest error standard, in order to reverse a trial court’s determination of a fact, an Inappellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Bonin v. Ferrellgas, 03-3024, p. 6-7 (La.7/2/04), 877 So.2d 89, 94-95; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993).
Allerton v. Broussard, 10-2071 (La.12/10/10), 50 So.3d 145, reconsideration denied, 10-2071 (La.1/28/11), 56 So.3d 974.
In addition, plaintiffs also argue that the trial court erred in denying their post-trial motions for JNOV and/or additur and, in the alternative, new trial.
JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is ’ of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact.
Joseph v. Broussard Rice Mill, Inc., 00-0628, (La.10/30/00), 772 So.2d 94, 99.
Plaintiffs allege that the jury erred in finding that they suffered no damages as a result of the accident. Likewise, they allege that the trial court erred in failing to grant a JNOV on the issue of damages. The cause of the accident is not disputed in this matter, as even defendant admits his foot slipped off the clutch and his truck rolled into the back of the plaintiffs’ vehicle. However, in dispute was the whether this accident resulted in damages suffered by plaintiffs. It is well established that in cases such as this, it is the plaintiffs who bear the burden of proof:
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the complained-of injuries. Spillers v. ABH Trucking Co., Inc., 30,332 (La.App. 2 Cir. 4/13/98), 713 So.2d 505, 509, writ denied, 98-1313 (La.6/26/98), 719 So.2d 1063; American Motorist Insurance Co. v. American Rent—All, Inc., 579 So.2d 429 (La.1991). The test for determining the causal relationship between the accident and subsequent injuries is “whether the plaintiff proved, through medical testimony, that it|12was more probable than not that the subsequent injuries were caused by the trauma suffered in the accident.” Id.
Powell v. Chabanais Concrete Pumping, Inc., 11-408 (La.App. 5 Cir. 12/28/11), 82 So.3d 548.
Plaintiffs first allege that the jury committed manifest error by failing to apply the Housley presumption in considering *1096 the causal relationship between the accident and the complained-of injuries.
The Housley presumption, set forth in Housley v. Cerise, 579 So.2d 973 (La.1991), is a legal presumption that “a medical condition producing disability is presumed to have resulted from the accident if the injured person was in good health prior to the accident, but shortly after the accident, the disabling condition manifested itself.” Powell, supra at page.
In the record, there was no instruction on the Housley presumption given to the jury, nor was any requested by the plaintiffs. Because the record fails to show that plaintiffs objected to the lack of a Housley charge, they cannot complain of such a lack on appeal. LSA-C.C.P. art. 1793(C); Compare Dardeau v. Ardoin, 97-144 (La.App. 3 Cir. 11/5/97), 703 So.2d 695, writ denied 98-0359 (La.3/27/98), 716 So.2d 889.
We now turn to the issue of whether the jury committed manifest error in failing to award damages to the plaintiffs.
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion, (citations omitted).
Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
1 ¡«¡Plaintiffs’ allege that the jury erred in finding they had suffered no injury, in light of the directed verdict of liability and lack of controverting evidence that the plaintiffs’ injuries were the result of the accident. In this case, the treating physicians testified that they concluded that the plaintiffs’ symptoms were caused, at least in part, by the accident. There was nothing presented by defendants to dispute this conclusion. Accordingly, we find that the jury committed manifest error in finding that plaintiffs’ suffered no injury, and in awarding $0.00 for damages, as a result of the accident. We further find error in the trial court’s failure to grant a JNOV on the issue of damages.
After determining that an award for general damages is an abuse of the trial court’s discretion, this Court can review prior awards to determine the highest or lowest point, which is reasonably within that discretion. Mixter v. Wilson, 10-164 (La.App. 5 Cir. 12/14/10), 54 So.3d 1164, 1169.
Ms. Hurt established that she suffered, at the least, a soft tissue injury for which she underwent conservative treatment for almost two years and which continued to cause pain at the time of trial, three years after the accident. In the absence of a disco-gram, which Ms. Hurt had refused to undergo, it was recommended that she continue treatment for chronic back strain. Plaintiff further testified that she continued to experience pain at the time of trial.
Mr. Stoll also established that he suffered, at the very least, a soft tissue injury for which he was treated for almost two years, and that he continued to suffer pain at the time of trial. In addition, because of his prior epileptic condition, he has developed a high tolerance to pain relievers which makes them ineffective.
In Crownover v. City of Shreveport, 43,521 (La.App. 2 Cir. 9/17/08), 996 So.2d 315, the appellate court affirmed an award of $25,000.00 to the elderly plaintiff who suf *1097 fered a contusion to her left shoulder and cervical strain. She was 114treated for almost one year, and still suffered pain at the time of trial three and one half years later. As a result of the pain, she was limited in her daily activities and no longer drove a car.
In Holland v. State Farm Mut. Auto. Ins. Co., 42,753 (La.App. 2 Cir. 12/5/07), 973 So.2d 134, the plaintiff was injured in a rear end collision and suffered neck and back pain and migraine headaches. At the time of trial 15 months later, she was still experiencing pain. The trial court’s award of $15,000.00 was affirmed.
In Waters v. Brookshire Grocery Co., 07-203 (La.App. 3 Cir. 11/7/07), 969 So.2d 1287, an award of $30,000.00 given to an 82 year old plaintiff who suffered a laceration to her arm and injury to her knee and back was affirmed. The plaintiff continued to suffer pain two and one half years later, at the time of trial, and injury significantly impacted her lifestyle.
In Cole v. Allstate Ins. Co., 2007-1046 (La.App. 3 Cir. 6/5/08), 987 So.2d 310, writ denied, 08-1463 (La.10/31/08), 994 So.2d 535, the appellate court found that an award of $10,000 for neck and back sprain where the neck sprain resolved itself after two years, but the plaintiff continued to suffer chronic lower back pain was inadequate and it raised the award to $30,000.00.
In Simon v. Lacoste, 05-550 (La.App. 3 Cir. 12/30/05), 918 So.2d 1102, plaintiff suffered a soft tissue injury lasting over two years, for which he had multiple healthcare visits and epidural treatment. The appellate court found the jury award of $5,000 abusively low and raised it to $15,000.00.
In light of the above cases, we find that the lowest reasonable award to compensate Ms. Hurt in this matter is $15,000. In addition, we find that the medical expenses incurred by Ms. Hurt were- reasonably related to the accident and that she is entitled to recover her medical expenses of $13,198.00.
|ir,We also find that the lowest reasonable award to compensate Mr. Stoll is $15,000.00. In addition, we find that the medical expenses incurred by Ms. Stoll were reasonably related to the accident and that he is entitled to recover his medical expenses of $19,544.00.
For the above discussed reasons, we amend the jury verdict to award to Ms. Gertrude Hurt $15,000.00 in general damages and $13,198.00 for medical expenses incurred. We further amend the jury verdict to award to Mr. Charles Stoll general damages of $15,000.00 and medical expenses of $19,544.00. All costs are assessed against defendants, appellees.

AMENDED AND AFFIRMED