STEPHEN J. WINDHORST, Judge.
| ^Plaintiffs, Rachel Babin wife of/and Royal Babin, filed suit for damages after their car was rear-ended by a car driven by defendant Matthew DeSalvo. Defendant State Farm was named in two capacities; as the automobile liability insurer of DeSalvo, and also as the uninsured/under-insured motorist liability insurer for plaintiffs.
Prior to trial, Mrs. Babin stipulated that her damages were $50,000.00 or less. Trial was bifurcated, with the issue of Mrs. Babin’s damages presented to the trial judge and the issue of Mr. Babin’s damages presented to the jury. At the conclusion of trial, the jury found that Mr. Babin suffered no damages as a result of the automobile accident. In accordance with the jury verdict, the trial judge rendered a verdict dismissing Mr. Babin’s suit with *254 prejudice. The trial judge rendered a second judgment in favor of Mrs. Babin for general damages of $50,000.00 and medical expenses of $11,106.06.
[/Thereafter, Mr. Babin filed a Motion for Judgment Notwithstanding the Verdict (JNOV) and/or Motion for New Trial. The trial court granted the motion, but failed to specify relief. Defendants (herein referred to as “State Farm”) appealed from both the judgment in favor of Mrs. Babin and the judgment granting Mr. Babin’s motion for JNOV. The panel dismissed the appeal, finding that all matters raised were premature, and remanded the case back to the trial court.[1] Babin v. State Farm, 11-192 (La.App. 5 Cir. 9/27/11), 76 So.3d 100.
After a hearing to address the remand, the trial court granted a JNOV and rendered judgment in favor of Mr. Babin, awarding damages for pain, suffering and emotional distress in the amount of $120,000.00 and medical expenses totaling $7,934.87. The trial court rendered a second judgment which reduced the damages awarded to Mrs. Babin to the stipulated maximum of $50,000.00.
Defendants now appeal from these judgments of the trial court. In the appeal, they allege that the trial court erred in finding that Mrs. Babin sustained injuries as a result of the accident. They further allege that the trial court erred in granting a JNOV in favor of Mr. Babin. Alternatively they argue that the award in favor of Mr. Babin is excessive. Plaintiffs answered the appeal, and alleged that the general damages and medical expenses awarded to Mr. Babin were inadequate. For the reasons that follow, we affirm the judgment of the trial court.
THE ACCIDENT
The accident occurred on January 7, 2006. At trial, Mr. DeSalvo testified that he was in a long line of cars that were slowing down. He was traveling approximately 5-10 mph when he became distracted and looked to his right. When |she looked back, he saw the Babin’s car in front of him. He attempted to stop, and he “bumped” the car. Mr. DeSalvo stated that the car did not move after he bumped it. Mr. DeSalvo stated that there was no visible damage to either car, and that the Babin’s indicated that they were fine after the accident. His car, which had a missing grill, sustained no damage.
Mrs. Babin testified that she and her husband, Mr. Babin, were stopped in their car, along with their daughter who was in the back seat. Mrs. Babin heard screeching brakes and they were hit from behind. At the time of impact, she was jolted forward, slight to moderate. Immediately after the accident, she turned to check on her daughter. She stayed in the car and called the police, while her husband exited the car. She testified that there was damage to the car’s bumper and that the damage was visible. That evening, she started feeling pain that became progressively worse.
Mr. Babin testified that he was driving the car at the time of the accident. The car was stopped and he had his foot on the brake. He heard tires screeching and looked in the mirror. Immediately there was an impact. He believed that the car was traveling 15-20 miles per hour at the *255 time of impact. He kept his foot on the brake, but the car still went forward. His body jolted forward, then back. He immediately twisted in his seat to check on his daughter, and then exited the car. He stated that his back bumper had marks on it, and there was debris on the street. Later that evening, he started feeling head and body aches.
Trooper Joanne Rozigas investigated the accident a prepared a police report. Her report stated that everyone involved reported no injuries. She asked for a general speed of travel, and recorded 10 miles per hour. She did not see any damage to either car. She cited Mr. DeSalvo for careless operation.
| fiState Farm paid $364.00 for damage to the car. The Babin’s did not have the car repaired.
MEDICALS — RACHEL BABIN
Mrs. Babin first went to Dr. Stewart Altman, a general surgeon, on January 10, 2006, with complaints of pain to her neck and back, and headaches.[2] She related the events of the accident and also described a prior accident three years earlier in which she injured her wrist and back. She had been released from treatment from that earlier accident and stated that she had fully recovered. After a physical examination, Dr. Altman diagnosed cephalgia, cervical spine strain, lumbar spine strain and trapezius muscle sprain, and he stated that all symptoms and findings were causally related to the accident. Conservative treatment of medications, and home and office therapy, was prescribed.
Conservative treatment continued to be recommended at Mrs. Babin’s next two office visits. On her April 3, 2006 visit, Mrs. Babin reported that her headaches, as well as her neck and mid back, were within normal limits. Her lower back had not improved. Medications were prescribed, however physical therapy was placed on hold. On her April 26, 2006 visit, Mrs. Babin reported that her headaches had increased, and that her lower back had not improved. On June 2, 2006, Mrs. Babin stated that her headaches were again within normal limits; however her lower back remained the same with no improvement.
Mrs. Babin returned to Dr. Altman on June 23, 2006, at which time she stated that her back was 80% to 90% better. At this visit, Dr. Altman found that Mrs. Ba-bin had significantly resolved her sprains, and she was discharged from treatment.
|70n October 17, 2006, Mrs. Babin returned to Dr. Altman complaining that her lower back had gotten worse. She was examined by Dr. Altman’s associate, and was discharged to the care of an orthopedist.
On November 7, 2006, Mrs. Babin started treatment with Dr. Kenneth Adatto, an orthopedist. At that time, she complained of constant, moderate to severe lower lumbar pain, which was not affected by lying down or by lifting. Dr. Adatto started a treatment plan of medication, home exercise, and periodic review and evaluation, and he requested that an MRI be performed. In December, an MRI was conducted with normal results.
Mrs. Babin returned to Dr. Adatto on June 19, 2007. On examination of the lumbar spine, Dr. Adatto noted limited motion with mild spasm present at both rest and stress. Dr. Adatto further noted chronic pain. In July of 2007, a CT scan of Mrs. Babin’s spine was performed. The *256 scan revealed degenerative changes (mild spondylosis), but no evidence of fracture or dislocation. On July 24, 2007, Mrs. Babin underwent a muscle injection. She received a second injection on July 30, 2007. The doctor’s notes indicate that Mrs. Ba-bin could continue her regular work. She was assessed with a permanent anatomical impairment to the lumbar spine of 10-15%. Restrictions imposed were avoiding repetitive stooping or bending and repetitive lifting of objects over 10-20 lbs., and to avoid prolonged sitting or standing in the same position for 45 minutes, plus or minus 15 minutes.
On August 4, 2007, an EMG was conducted. The results indicated mild radicu-lopathies at L5, SI, right side only. On August 16, 2007, plaintiff again was injected. The doctor’s notes indicated continued complaints of thoracic back pain. On October 9, 2007, Mrs. Babin was injected in paraspinous muscles on both the left and the right side and the same on January 10, 2008, April 10, 2008 and June 5, 2008. An office visit of July 31, 2008, had same results, no injections.
| ¡^Thereafter until trial, Mrs. Babin returned to Dr. Adatto’s office approximately every two to three months for injections. Treatment was ongoing at the time of trial. At the time of trial, Dr. Adatto’s diagnosis and restrictions were unchanged.
By letter dated February 25, 2010, Dr. Adatto stated that he viewed a video provided to him and he found that the movements made by Mrs. Babin were within the restrictions he imposed. This video tape was played at the trial of this matter.
Mrs. Babin testified at trial that she had been in one prior accident in 2002, however her symptoms resolved after one doctor’s visit. Rachel further testified that she was involved in three accidents subsequent to the one at issue, and that two of them temporarily aggravated her symptoms; however her treatment plan did not change. Mrs. Babin admitted that she did not tell her general physician of her accident or back injury, explaining that he was not treating her for that condition.
Mrs. Babin was also examined one time by Dr. Robert Steiner, an orthopedist, on request of defendants. He stated in his opinion her injuries were resolved at the time of trial.
MEDICALS — ROYAL BABIN
Mr. Babin first sought treatment with Dr. Altman on January 10, 2006, complaining of pain to his neck and back, and headaches. Dr. Altman diagnosed cervical spine strain, trapezius muscle sprain, lumber spine strain. He.prescribed conservative treatment of medications and therapy. Dr. Altman opined that Mr. Babin’s injuries were causally related to the accident. Mr. Babin returned to Dr. Altman’s office on January 24, 2006, at which time he reported that his neck felt better, but his mid and lower back had not improved. Conservative treatment was continued.
19An MRI was performed on May 16, 2006, which showed a herniated disc at L4-L5.
Mr. Babin began treatment with Dr. Kenneth Adatto, an orthopedist, on June 20, 2006. After evaluation, Dr. Adatto diagnosed a displacement of the lumbar in-tervertebral disc and thoracic sprain and strain. Dr. Adatto recommended therapy, and noted that surgical treatment might become an option in the future. Dr. Adat-to assessed a permanent anatomical impairment of 10-15% of the lumbar spine. Limitations imposed were avoidance of repetitive stooping, or bending and repetitive lifting of objects over 10-20 pounds as well as prolonged sitting or standing in the same position for 45 minutes, without moving.
*257 Mr. Babin was seen by Dr. Adatto approximately every three months, at which time he was given spinal injections. At each visit, Mr. Babin was deemed stable and his prognosis was fair. Dr. Adatto noted on each visit that Babin was a chronic pain patient.
On May 1, 2007, Mr. Babin returned to Dr. Adatto’s office for an injection. At that visit, the possibility of surgery was discussed. At his July 31, 2007 visit, Mr. Babin indicated that he wanted to wait before having surgery. Mr. Babin testified that he and Dr. Adatto discussed the possibility of surgery. However, he decided against it because of his youth (34 at the time of trial) and the lengthy recovery period which would affect his ability to work.
On February 25, 2010, Dr. Adatto wrote a letter in which he stated that he reviewed a video tape, and that the activities shown, namely sitting in a garage with his father-in-law working on a motor and putting a 22 pound case of water in the trunk of a car fit within the guidelines of his restrictions.
Dr. Steiner conducted a one-time examination of Mr. Babin on request of the defendants. He noted that testing showed a degenerative disc at L4-5, which [ 10would result in a dermatone (pain pattern) at the top of the foot. However, Mr. Babin complained of pain in the leg, not the foot. At trial, Dr. Steiner admitted that in his prior deposition, he related Mr. Babin’s symptoms, but not necessarily the condition, to the accident. However, by the time of trial he had changed his opinion, and now believed that Mr. Babin suffered no injury, because he did not think the impact between the vehicles was great enough to cause the injury.
Mr. Babin testified that he did not have any back injury prior to the accident in question. He was involved in a motorcycle accident in 1996 or 1997 which resulted in injury to his left knee and elbow (requiring skin graft), but he did not suffer a back injury in that accident. He was also involved in a water skiing accident 3 months later in which he broke his right elbow. Mr. Babin was involved in a subsequent accident in 2009, which resulted in shoulder pain for one week.
Mr. Babin testified that, at the time of trial, he was still in pain on a varying basis. Some days his pain would be 8 of 10, and others 3 or 4 of ten. On some days, he would have no pain at all. He stated that because of his back injury, he could no longer put his daughter on his shoulders, or participate in sports with his friends and fishing in the Gulf. He further stated that he was always thinking about how to move so as to not aggravate his back. Mr. Babin admitted that he did not tell his general physician of his accident or injury because that physician was not treating him for that condition. DISCUSSION
Defendant, State Farm, as the insurer of the defendant driver, filed an appeal in which it alleges that the trial court erred in awarding any damages to Mrs. Babin; that the trial court erred in granting a JNOV in favor of Mr. Babin; or if the trial court did not err in granting the JNOV, then the award of damages was excessive.
InState Farm, as the uninsured/underin-sured motorist insurance carrier of the Babins, filed a second appeal in which it alleges that the trial court erred in granting the JNOV in favor of Mr. Babin; or if the granting of the JNOV was proper, then the trial court awarded excessive damages; and that the trial court erred in awarding amounts in excess of State Farm’s stipulated policy limits.
Mr. Babin filed an answer to the appeal, in which he alleges that the medical ex *258 penses awarded of $7,934.00 were insufficient because the parties stipulated that medical expenses of $9,334.00 were incurred; and that the general damage award of $120,000 was inadequate and should be increased to $175,000.
Under the manifest error standard, a determination of fact is entitled to great deference on review. McGlothlin v. Christus St. Patrick Hosp., 2010-2775 (La.7/1/11), 65 So.3d 1218,1230.
A court of appeal may not set aside a trial court’s findings of fact in the absence of manifest error or unless they are clearly wrong. Under the manifest error standard, in order to reverse a trial court’s determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Bonin v. Ferrellgas, 03-3024, p. 6-7 (La.7/2/04), 877 So.2d 89, 94-95; Sto-bart v. State through Dept, of Transp. and Development, 617 So.2d 880, 882 (La.1993). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, Id.
Allerton v. Broussard, 10-2071 (La.12/10/10), 50 So.3d 145, 145, reconsideration denied, 10-2071 (La.1/28/11), 56 So.3d 974.
In alleging that the trial court erred in granting judgment in favor of Ms. Babin, State Farm points to the speed of the accident, and what they consider inconsistencies in Mrs. Babin’s testimony, to allege the trial court’s finding that Mrs. Babin was injured and was not reasonable. However, the trial court heard the evidence presented by both the plaintiffs and State Farm. Both treating physicians 112testified to Ms. Babin s injuries, and both found that her injuries were causally related to the accident.
State Farm next alleges that the trial court erred in granting a JNOV in favor of Mr. Babin.
A motion for JNOV may be granted on the issue of liability or on the issue of damages or on both issues. La. C.C.P. art. 1811(F). In ruling on a motion for a judgment notwithstanding the verdict (JNOV), the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party; this rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact. In re Gramercy Plant Explosion at Kaiser, 04-1151 (La.App. 5 Cir. 3/28/06), 927 So.2d 492, 499, writ denied, 08-0481 (La.5/2/08), 982 So.2d 763, and 08-0481 (La.6/20/08), 983 So.2d 1263.
[A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions *259 should be resolved in favor of the non-moving party.
In reviewing a JNOV, an appellate court must first determine whether the district judge erred in granting the JNOV by using the above-mentioned criteria in the same way as the district judge in deciding whether to grant the motion. Thus, the appellate court must determine whether the “facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict.” If the appellate court determines that reasonable persons might reach a different conclusion, then the district judge erred in granting the motion and the jury verdict should be reinstated. [Citations omitted.]
Trunk v. Medical Center of Louisiana at New Orleans, 04-0181, p. 4 (La.10/19/04), 885 So.2d 584, 537, citing Joseph v. Broussard Rice Mill, Inc., 00-0628, pp. 4-5 (La.10/30/00), 772 So.2d 94, 99; see also VaSalle v. Wal-Mart Stores, Inc., 01-0462, p. 11 (La.11/28/01), 801 So.2d 331, 338-39.
State Farm alleges that the jury verdict was correct and that the trial court erred in granting the JNOV. It again points to inconsistencies in the testimony and the speed of the vehicle at the time of the accident, as well as the report of their examining physician. It also argues that the jury didn’t apply the Housley presumption, and the trial court should not have either.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the complained-of injuries. Stoll v. Allstate Ins. Co., 11-1006 (La.App. 5 Cir. 5/8/12), 95 So.3d 1089, 1095. The test for determining the causal relationship between the accident and subsequent injuries is “whether the plaintiff proved, through medical testimony, that it was more probable than not that the subsequent injuries were caused by the trauma suffered in the accident.” Stoll, supra at 1095, citing Powell v. Chabanais Concrete Pumping, Inc., 11-408 (La.App. 5 Cir. 12/28/11), 82 So.3d 548, 558.
The' Housley presumption, set forth in Housley v. Cerise, 579 So.2d 973 (La.1991), is a legal presumption that “a medical condition producing disability is presumed to have resulted from the accident if the injured person was in good health prior to the accident, but shortly after the accident, the disabling condition manifested itself.” Stoll, supra at page 1095; Powell, supra at page 558.
In this case, the trial court could have found that the evidence pointed so strongly in favor of a finding that the accident caused Mr. Babin’s injuries that reasonable persons could not have arrived at a contrary verdict. The evidence showed that Mr. Babin suffered no back injury before the accident, however after 114the accident he suffered pain which never resolved, and ultimately he was assessed with a 10-15% permanent anatomical disability. Both of Mr. Babin’s treating physicians found that his injuries were causally related to the accident. We are aware that “the diagnosis and opinions of a plaintiffs treating physician and specialists to whom referred by the treating physician are entitled to more weight than that of those doctors examining the plaintiff for consultation for litigation purposes only.” Prestenback v. Schwegmann Giant Supermarkets, Inc., 96-0793 (La.App. 5 Cir. 1/28/97), 688 So.2d 149, 156, writ denied, 97-0977 (La.5/30/97), 694 So.2d 249. While the doctor who examined Mr. Babin one time on behalf of State Farm stated that he did not find Mr. Babin’s condition causally related to the accident, he also admitted that in his prior deposition he had related the injury to the accident and *260 he only changed his mind because he was told that there was no damage to the Babin vehicle. Given the undisputed evidence that Mr. Babin had no back pain prior to the accident and assessed with a permanent anatomical disability after the accident, the Housley presumption was not rebutted in this case. We find no error in the trial court’s decision to grant a JNOV in this case.
We also note that the trial court did not rule on State Farm’s alternative motion for new trial as required by La. C.C.P. art. 1811. We decline to remand this particular matter to the district court because such an action would be contrary to the concept of judicial economy and the interest of the parties in having this lawsuit concluded. Trunk, supra. Because we affirm the trial court’s ruling granting a JNOV, a new trial is not warranted in this case.
State Farm next argues that, in the event that we affirm the trial court’s granting of a JNOV, the amount of damages awarded by the trial court is excessive. In his answer to the appeal, Mr. Babin alleges that the trial court erred in awarding inadequate damages.
11sIt is well-settled that vast discretion is accorded to the trier of fact in fixing general damage awards. La. C.C. art. 2324.1; Howard v. Union Carbide Carp., 2009-2750 (La.10/19/10), 50 So.3d 1251. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert, denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). An appellate court may not overturn an award for damages unless it is so out of proportion to the injury complained of that it shocks the conscience. Harrington v. Wilson, 08-544 (La.App. 5 Cir. 1/13/09), 8 So.3d 30, 40.
After review, we find no abuse of discretion in the trial court’s general damage award of $120,000 for a back injury which had not resolved in the four years between the accident and trial, and for which Mr. Babin had been assigned a permanent impairment of 10-15% of the body as a whole. In addition, Mr. Babin had already undergone several injections for pain, with the possibility of more injections and future surgery. Accordingly we find no merit to State Farm’s allegation that the award was excessive. We likewise find merit to Mr. Babin’s assertion that the award for general damages was inadequate.
Considering Mr. Babin’s assertion that the trial court erred in its award for medical expenses, at trial the parties stipulated that Mr. Babin’s medical expenses totaled $9,337.00. Accordingly, we find that the trial court erred in its award of $7,934.87 for medical expenses, and we amend the trial court judgment to award to Mr. Babin $129,337.00, reflecting a general damage award of $120,000.00 and a special award for medical expenses of $9,337.00.
11fiFinally, State Farm alleges as error that the trial court does not specify as to its capacity in the judgment against it. State Farm argues that its’ liability policy for the tortfeasor is $100,000 and it’s UM coverage is $10,000, and therefore the trial court erred in awarding amounts in excess of $110,000.00 against it. Pursuant to a contract of automobile liability insurance, the insurer agrees to indemnify the tortfeasor for his acts of negligence, up to the limits of the policy. Pursuant to the UM provisions, an insurer agrees to pay the victim for un *261 compensated damages, up to the limits of the policy. We know of no jurisprudence which requires the trial court to limit its award of damages to the limits of an insurance policy. Likewise, we know of no statute or jurisprudence which would require an insurer to pay the damage award above the limits of its applicable policy in the ordinary course of proceedings. This issue is without merit.
CONCLUSION
For the above discussed reasons, the trial court’s judgment in favor of Mrs. Babin and against defendants, State Farm Mutual Automobile Insurance Company and Matthew DeSalvo is affirmed. The trial court’s judgment in favor of Mr. Ba-bin and against defendants, State Farm Mutual Automobile Insurance Company and Matthew DeSalvo is amended to award general damages of $120,000.00 and special damages for medical expenses of $9,387.00, and as amended, is affirmed. All costs are assessed against appellants.
AMENDED, AND AS AMENDED, AFFIRMED
LILJEBERG, J., dissents with reasons.

. As to the appeal granting the JNOV in favor of Mr. Babin, the panel found that the judgment did not specify whether the court was granting the JNOV or a new trial, and that if it meant to grant a JNOV the award was not specified, and thus it was not a judgment. Therefore, the motion for JNOV and/or new trail was still pending. With regard to Mrs. Babin’s appeal, since post-trial motions were still pending, the delay for filing an appeal had not yet commenced.

. Dr. Altman did not testify at trial. The medical records of his treatment were introduced into evidence.