# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 15-120

TYRON REED AND TINA REED,
INDIVIDUALLY AND ON BEHALF
OF HER MINOR CHILD,
TRENTEZ J. GILCHRIST

VERSUS

DONDI LACOMBE AND
STATE OF LOUISIANA,
DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS,
AVOYELLES CORRECTIONAL
CENTER

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 244,626
HONORABLE GEORGE C. METOYER JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, Marc T. Amy, James T. Genovese, and Phyllis M. Keaty, Judges.

Thibodeaux, Chief Judge, dissents for the reasons assigned by Judge Cooks.

Cooks, J., dissents in part and assigns written reasons.

Amy, J., concurs in part, dissents in part, and assigns written reasons.

JUDGMENT AMENDED IN PART.
AFFIRMED AS AMENDED.

**Victoria R. Murry**
**Louisiana Department of Justice**
**Post Office Box 1710**
**Alexandria, Louisiana  71309**
**(318) 487-5944**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **Avoyelles Correctional Center,**
 **Dondi LaCombe, and**
 **State of Louisiana, Department of Public Safety and Corrections**


**Howell D. Jones, IV**
**Jones Law Firm**
**Post Office Box 14558**
**Alexandria, Louisiana  71315**
**(318) 442-1515**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
 **Tyron Reed and Tina Reed**

**GENOVESE, Judge.**

The plaintiffs in this matter alleged that they were injured as a result of an automobile accident caused by the defendant-driver, an employee of the State of Louisiana, Department of Public Safety and Corrections. After a trial, the trial court entered judgment in favor of the plaintiffs and awarded both general and special damages to each plaintiff. The State appeals, contesting the damage awards. For the following reasons, we amend the judgment in part and affirm as amended.

## FACTS AND PROCEDURAL BACKGROUND

Tyron Reed was driving on the interstate with Tina Reed and Trentez Gilchrist, the Reeds' minor son,[1] as passengers in the car. According to the record, Dondi LaCombe, who was employed by the State of Louisiana, Department of Public Safety and Corrections, and driving a van owned by the State, struck the Reeds' vehicle while attempting to change lanes shortly after merging on to the interstate. Alleging that they suffered injuries as a result of the accident, the Reeds filed suit against Mr. LaCombe and the State.

In addition to testimony concerning the mechanics of the accident, Mr. and Mrs. Reed testified about their injuries and Trentez's injuries. As relevant to this appeal, Mr. Reed testified that after the accident, he had headaches and lower back pain. The day after the accident, Mr. Reed went to the emergency room for those complaints. Over the next year, Mr. Reed made a few visits to a chiropractor and to a physician who prescribed acupuncture and physical therapy. Mr. Reed

---

[1]The petition is styled as "Tyron Reed and Tina Reed, individually and on behalf of her minor son, Trentez Gilchrist." Although the State filed an exception of procedural capacity regarding Tina's authority to bring suit on Trentez's behalf, there is nothing in the record indicating that that exception was resolved. However, at trial, Mrs. Reed testified that Trentez is the child of Mr. Reed and herself.

testified that, at the time of trial, he still had pain in his back when he bends over, which has limited his ability to play with his children and to do certain jobs.

In addition to his physical complaints, Mr. Reed testified that on April 21, 2012, approximately a week after the accident, he had a seizure and sought treatment at the Christus St. Frances Cabrini emergency room. The records from that visit, which were entered into evidence, indicate that Mr. Reed had a cranial CT scan. Mr. Reed also submitted to a drug screen, which returned positive results for alcohol, cocaine, and cannabinoids.[2] Mr. Reed was diagnosed with "seizure-like activity" and "polysubstance abuse." Mr. Reed also went to the Rapides Regional Medical Center emergency room on April 24, 2012, and October 31, 2012, with complaints of seizure activity.

The record indicates that Mr. Reed was eventually referred to Dr. Charles Ugokwe, a neurologist. Dr. Ugokwe's deposition was admitted into evidence. Mr. Reed visited Dr. Ugokwe on one occasion in December 2012 and was given a prescription for Depakote. The evidence was that Dr. Ugokwe prescribed five months' worth of Depakote and that Mr. Reed did not seek further treatment. Mr. Reed testified that he had not had any seizures for approximately a year and half at the time of trial. According to Dr. Ugokwe, alcohol and polysubstance abuse can cause seizures. Further, Dr. Ugokwe stated that it would be unusual for seizure activity to stop completely without treatment. Dr. Ugokwe also opined that, without an EEG or video, he could not be certain that Mr. Reed actually had a seizure and that, assuming that he did, it was "less than 25 percent to really say that [the car accident] caused the seizure."

---

[2]The drug screen results in the record show that Mr. Reed tested "positive" for cocaine and cannabinoids, and that his ethanol level was "< 10.1" mg/dL.

With regard to Trentez's injuries, Mrs. Reed testified that Trentez hit his head on the door during the accident and that he has had headaches ever since. Trentez also went to the Cabrini emergency room on April 17, 2012, the day after the accident. During that visit, he had X-rays taken and was told to take Tylenol and Motrin. Mrs. Reed testified that, on April 26, 2012, a little more than a week after the accident, Trentez went to the Oakdale Community Care emergency room because he was continuing to complain of headaches. According to Mrs. Reed, Trentez still has daily headaches and complains about them at least five times a week. Mrs. Reed testified that Trentez did have headaches before the accident, but that the headaches stopped when they took him off his ADHD medication. Mrs. Reed also took Trentez to the chiropractor, where he was seen in May and June of 2012.

After trial, the trial court entered judgment in favor of the plaintiffs and awarded Mr. Reed general damages in the amount of $15,000.00 and special damages in the amount of $30,578.19; Mrs. Reed general damages in the amount of $25,000.00 and special damages in the amount of $8,179.32; and Trentez general damages in the amount of $10,000.00 and special damages in the amount of $1,447.46. The State appeals.

### ASSIGNMENTS OF ERROR

The State assigns the following errors for our review:

I.    The trial court erred in awarding excessive damages in the amount of ten thousand ($10,000.00) dollars in general damages to Trentez Gilchrist.

II.   The trial court erred in awarding $20,816.00 in medical expenses to Tyron Reed for evaluation of his purported seizure condition where his treating neurologist could not relate the seizure condition to the accident with even a 25% probability.

## LAW AND DISCUSSION

*Special Damages*

The State contends that the trial court erred in awarding Mr. Reed special damages related to his evaluation and treatment for seizures. "Special damages are those damages which may be determined with some degree of certainty and include past and future medical expenses and past and future lost wages." *McDaniel v. Carencro Lions Club*, 05-1013, p. 44 (La.App. 3 Cir. 7/12/06), 934 So.2d 945, 977, *writ denied*, 06-1998 (La. 11/3/06), 940 So.2d 671. An award of special damages is subject to the manifest error standard of review. *Thibeaux v. Trotter*, 04-482 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128, *writ denied*, 04-2692 (La. 2/18/05), 896 So.2d 31.

The plaintiff must prove his entitlement to special damages by a preponderance of the evidence. *McDaniel*, 934 So.2d 945. Thus, "[t]o recover past medical expenses, a plaintiff must show, through medical testimony, both the existence of the injury and a causal connection between the injuries and the incident or accident of which plaintiff complains." *Burrell v. Williams*, 05-1625, p. 7 (La.App. 1 Cir. 6/9/06), 938 So.2d 694, 699. The allegation that a plaintiff incurred medical expenses and the presentation of a related bill is sufficient evidence to support the inclusion of those expenses in the judgment unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident. *Simon v. Lacoste*, 05-550 (La.App. 3 Cir. 12/30/05), 918 So.2d 1102.

It is not contested that the total amount of medical expenses associated with the treatment of Mr. Reed's seizure condition is $20,816.00, consisting of: 1) $5,204.00 in charges from the April 21, 2012 Cabrini emergency room visit; 2)

$6,131.00 in charges from the April 24, 2012 Rapides emergency room visit; and 3) $9,481.00 in charges from the October 31, 2012 Rapides emergency room visit. The record contains bills in those amounts associated with Mr. Reed's emergency room visits on those dates at which he sought treatment pertaining to his seizure condition.

Although the plaintiffs provided documentation of Mr. Reed's seizure-related medical expenses, the evidence in the record does not support Mr. Reed's assertion that the seizures were a result of the accident. According to the record, Mr. Reed sought treatment for "seizure-like activity" approximately a week after the accident at the Cabrini emergency room. The medical records from that visit indicate that Mr. Reed tested positive for alcohol, cocaine, and cannabinoids and that the emergency room doctor's diagnosis was "seizure-like activity" and "polysubstance abuse." At trial, Mr. Reed admitted that he had used narcotics in the past. Dr. Gerald Leglue, who treated both Mr. and Mrs. Reed, testified in his deposition that substance abuse can lead to seizures. Importantly, Dr. Ugokwe, who treated Mr. Reed for his seizure condition, testified that head trauma can cause new-onset seizures in adults.

However, during Dr. Ugokwe's deposition, the State's attorney informed the doctor that there were records from Mr. Reed's first seizure-related emergency room visit that diagnosed his "problem [as] due to alcohol and [polysubstance] abuse." Dr. Ugokwe agreed that those factors could cause Mr. Reed's symptoms. Similarly, when questioned if there was some factor other than head trauma that could cause Mr. Reed's seizures, Dr. Ugokwe stated that the most common cause of new-onset seizures in adults is a tumor and the second most common cause is "a toxic problem – drugs or alcohol, especially alcohol withdrawal."

5

Dr. Ugokwe stated that, although he had seen them, post-traumatic seizures are "common in kids, as opposed to adults[.]" When asked if the car accident caused Mr. Reed's seizures, Dr. Ugokwe noted that he did not have an EEG and had not witnessed a seizure, so he "cannot say a hundred percent that this seizure is from the accident. Number two, I cannot say a hundred percent that he [had] a seizure." Further elaborating on whether the car accident caused Mr. Reed's seizure activity, Dr. Ugokwe stated:

> I can't say that for sure. But since he never had an acci – since he never had a seizure before, that's why I'm going by what he told me. Because remember that with about 50 percent of people, what they tell you about their seizure is totally different. That's if he never had a seizure before, I'm going from what he said.
>
> . . . .
>
> [W]ell, number one, I'm not a hundred percent sure that he [had] a seizure.
>
> . . . .
>
> Number two, to say that – this says that he just hit his head to the – "he hit his head to the door, with no loss of consciousness, rather disoriented." To be the cause of seizure, I will err – I will err on the side that because he hit his head to the door, to cause – if he was a pediatric patient, I would probably attribute it to it. But for an adult, I would be less than 50 percent saying that that caused it.
>
> . . . .
>
> But for an adult, I would – I would be less than 25 percent to really say that this caused the seizure. And with the history that [the State's attorney] has just given me that the emergency room is saying something about alcohol . . . .

Having reviewed the record, we find that the plaintiffs did not prove by a preponderance of the evidence that Mr. Reed's seizure condition was related to the accident. Thus, because there is no reasonable basis in the record supporting a causal connection between the seizure activity and the accident, we conclude that

the trial court was manifestly erroneous in awarding Mr. Reed special damages for his *non-diagnostic* expenses related to his seizure condition. Further, we reject the plaintiffs' contention that the rule articulated in *Rowe v. State Farm Mutual Automobile Insurance Co.*, 95-669 (La.App. 3 Cir. 3/6/96), 670 So.2d 718, *writ denied*, 96-824 (La. 5/17/96), 673 So.2d 611, allows an award of special damages where the treatment is not related to the accident provided that the treatment was sought in good faith. A panel of this court stated in *Rowe*, 670 So.2d at 729 (emphasis added), that "[w]hen incurred in good faith, the victim is entitled to recover the full amount of medical expenses incurred *as a result of the accident*." We find nothing in this pronouncement that would remove the requirement that a plaintiff prove that the condition which required treatment was caused by the accident.

Though we disallow Mr. Reed's seizure-related medical expenses due to a lack of proof of causation, we do not disallow the medical expenses he incurred on his April 21, 2012 hospital visit four days after the accident, wherein he first complained of seizure-related activity. At that point, especially considering the fact that Mr. Reed struck his head on the car window in the accident, it was certainly reasonable for Mr. Reed to seek medical consultation and undergo related diagnostic testing to determine the nature and cause of the seizure-related activity, even though it turned out later that the seizure-related activity was not related to the automobile accident in question.

At the time of the trial, Mr. Reed was thirty years old. He testified that he had never experienced a seizure before the accident and that he began having seizures a few days after the accident. Mr. Reed's wife corroborated his testimony relative to the seizure activity.

7

In *Marshall v. Boydston*, 09-1137 (La.App. 3 Cir. 3/17/10), 33 So.3d 438, *writ denied*, 10-881 (La. 6/25/10), 38 So.3d 339, this court found that the trial court abused its discretion by denying expenses plaintiff incurred for diagnostic procedures. The plaintiff underwent Magnetic Resonance Imaging (MRI) scans soon after the injury-causing motor vehicle accident. This court held that the defendant was responsible even for unnecessary medical treatment incurred by the plaintiff in good faith since there was no sufficient contradictory evidence or reasonable suspicion that the plaintiff's MRIs were not related to the motor vehicle accident.

We, likewise, agree with the pronouncement in *Motorola, Inc. v. Associated Indemnity Corp.*, 02-716, p. 13 (La.App. 1 Cir. 6/25/04), 878 So.2d 824, 833, *writs denied*, 04-2314, 04-2323, 04-2326, 04-2327 (La. 11/19/04), 888 So.2d 207, 211, 212, wherein the first circuit stated:

> The following language from Justice Lemmon's additional assigned reasons in *Wainwright* [*v. Fontenot*, 00-492, p. 1 (La. 10/17/00), 774 So.2d 70, 78,] is especially pertinent here:
>
> > **When a tortfeasor causes an occurrence which subjects the tort victim to the reasonable possibility of serious injury, the tortfeasor is liable for the reasonable expenses incurred by the tort victim** in consulting appropriate medical personnel and **in insuring that the adverse effects of the occurrence will be prevented or minimized.** This liability for medical consultation or treatment ensues from the tort even if the tort victim is fortunate enough that serious injury does not actually result. (Our emphasis; footnotes omitted.)

Hence, we find no manifest error in the trial court awarding the $5,204.00 hospital expense incurred by Mr. Reed for diagnostic testing performed at Cabrini Hospital on April 21, 2012. However, as previously set forth, because the plaintiffs failed to prove that the seizure condition was causally related to the

accident, we conclude that the trial court was manifestly erroneous in awarding Mr. Reed the full amount of $20,816.00 associated with his treatment for his seizure condition. Accordingly, we reduce the special damages awarded to him from $30,578.19 to $14,966.19.

*General Damages*

The State also contends that the $10,000.00 general damage award to Trentez is excessive. General damages, which include pain and suffering, physical impairment and disability, and loss of enjoyment of life, are speculative in nature and thus incapable of being fixed with any mathematical certainty. *Thibeaux*, 883 So.2d 1128. The factfinder's award of general damages is subject to the abuse of discretion standard of review. *Simon*, 918 So.2d 1102. A general damage award should only be increased or reduced if it is beyond that which a reasonable trier of fact could assess for the effects of a particular injury to a particular plaintiff under the particular circumstances of the case. *Id.* In making that determination, the appellate court should not rely on a comparison of prior awards in cases with similar medical injuries, but should rely on the primary considerations of the duration and severity of the plaintiff's pain and suffering. *Guillot v. Doe*, 03-1754 (La.App. 3 Cir. 6/30/04), 879 So.2d 374. If an appellate court finds that a general damages award is unreasonable, the court should raise or lower the award to the highest or lowest point that would have been within the factfinder's discretion. *Simon*, 918 So.2d 1102.

In this case, the medical records entered into evidence indicated that the Reeds sought limited medical treatment for Trentez, who was eight years old at the time of the accident. However, the notes from one of Trentez's chiropractic appointments approximately a month after the accident indicate that Trentez

9

complained of a headache daily with vomiting and that Mrs. Reed told the chiropractor that Trentez's school called daily about his headaches. Mrs. Reed testified that Trentez hit his head during the accident and began having almost-daily headaches from that point which had not resolved by the time of trial. If the trial court, as the finder of fact, credited this testimony, it would indicate that Trentez was suffering from headaches as a result of the accident more than two years later. Given Trentez's young age; the evidence of the frequency, apparent severity, and ongoing duration of his headaches; and the evidence that the headaches interfered with his schooling, we cannot say that the trial court abused its discretion in awarding Trentez $10,000.00 in general damages.

This assignment of error is without merit.

**DECREE**

For the foregoing reasons, we amend the judgment to reduce the award of special damages to Tyron Reed from $30,578.19 to $14,966.19 and affirm the judgment as amended, including the trial court's award of general damages for Trentez Gilchrist. Costs of this appeal are assessed to the plaintiffs, Tyron Reed and Tina Reed, individually and on behalf of Trentez Gilchrist.

**JUDGMENT AMENDED IN PART.**

**AFFIRMED AS AMENDED.**

TYRON REED AND TINA REED, INDIVIDUALLY
AND ON BEHALF OF HER MINOR CHILD,
TRENTEZ J. GILCRHIST

VERSUS

DONDI LACOMBE AND STATE OF LOUISIANA,
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,
AVOYELLES COORECTIONAL CENTER

**COOKS, J., dissenting in part.**

I dissent from the portion of the majority opinion finding the trial court erred in awarding Mr. Reed the full amount of the $20,816.00 associated with his treatment for his seizure condition. I find the record supports the trial court's award of the medical expenses incurred by Mr. Reed for treatment of his seizures.

The facts established the vehicle driven by Mr. Reed was struck by a van owned by Avoyelles Correctional Center. It was not disputed that Mr. Reed struck his head on the car window as a result of the collision. Mr. Reed testified, while not losing consciousness, he was disoriented from the blow to his head. He went to the emergency room the following day complaining of neck pain. Four days later, he returned to the emergency room, noting he had suffered a seizure. Three days later, Mr. Reed again went to the emergency room complaining of more seizures. According to Mr. Reed, he continued to experience periodic seizures over the next several months and again went to the emergency room seeking treatment for the seizures. He was then referred to Dr. Charles Ugokwe, a neurologist, for further treatment of his seizure problem. Approximately one month after seeing Dr. Ugokwe and being prescribed medication, Mr. Reed's seizures abated.

Mr. Reed's testimony was unequivocal in this matter. He stated he was thirty years old at the time of the accident, and had never experienced a seizure before. He stated he first experienced a seizure a few days after the accident, and would experience them periodically. He maintained nothing during that period in his life changed other than the occurrence of the accident. Mr. Reed's wife corroborated the occurrence of the seizures.

Defendant relies on the testimony of Dr. Ugokwe for its position that the purported seizures were not related to the accident. A review of Dr. Ugokwe's deposition testimony offers no basis for this contention by Defendant.

Dr. Ugokwe stated Mr. Reed's description of his seizures, "fits a typical seizure." Dr. Ugokwe noted his neurological examination of Mr. Reed revealed "no clear abnormality," but noted when dealing with seizures "most of the time the exams are normal." Dr. Ugokwe prescribed Depakote for Mr. Reed. When asked if he was surprised that Mr. Reed's seizures "spontaneously stopped," Dr. Ugokwe stated it was not surprising "if the Depakote took care of it." Despite aggressive questioning from defense counsel, Dr. Ugokwe would not "call into question whether [Mr. Reed] ever had the seizures at all." Dr. Ugokwe stated:

> So its going to be hard to say does this person have seizure or does he not have seizure. So basically you're going to go by what he tells you. Because he had his seizure and bit his tongue, I tend to think that he may have seizure for real. But if you put a gun at my head and say, "Can you swear?", I'll tell you, "No, I would not swear."

Dr. Ugokwe also was asked if he could rule out the possibility that this car accident caused the seizures. He responded:

> Q. Okay. Have you seen any cases like this before where a person develops some type of seizure symptoms from trauma?
>
> A. Yeah. A post-traumatic seizure, yeah.
>
> Q. Would you say that that's something that's common?
>
> A. It's common in kids, as opposed to adults, but I've seen it in adults.

Q. So is there any way that you could rule out the possibility that this car accident caused these seizures?

A. No. But when you see post-traumatic seizure in adults, they usually have some head trauma.

Q. And would hitting your head on a window in a car accident constitute head trauma?

A. That's a head trauma, because it would – even though it did not attribute to his headache, you probably would put everything under the umbrella of a post traumatic event.

Q. All right. I asked you if you could rule out the possibility that this car accident caused the seizures. Conversely, could you say in any way for sure that this car accident caused these seizures?

A. There's no way that I can say a hundred percent.

Dr. Ugokwe also noted that Mr. Reed suffered a traumatic brain injury, which made him more likely to suffer from seizures. He explained:

A traumatic brain injury, like in this – like this falls into the spectrum of – since he said he hit his head, he falls into the spectrum of traumatic brain injury. And – and he's complaining of headache, although he never told me that his headache is from the head injury. But everything falls into the umbrella that this guy may have a traumatic brain injury. But can you prove it? That's very – even – that's even harder to prove. Because I see the soldiers that come in for you to examine them for their disability, and it's very hard to prove that they have a traumatic brain injury.

A review of Dr. Ugokwe's testimony clearly shows he could not rule out that Mr. Reed suffered seizures, and that the seizures were related to the accident. The majority justifies its reversal of the trial court's medical expense award on the position that any seizures experienced by Mr. Reed could have been caused by alcohol and drug use. Mr. Reed acknowledged he has a history of recreational use of drugs and alcohol, a history that unequivocally predated the accident in question. However, he noted he had never before experience any seizure until a few days after the accident. The trial court heard Defendant's argument below that the seizures may have been caused by Tyron's drug and alcohol use, but chose to disregard it. This certainly was a reasonable conclusion, particularly as Dr.

Ugokwe's testimony could not relate the seizures suffered by Tyron to any drug and alcohol use. Moreover, the uncontradicted testimony that Mr. Reed did not suffer any seizure until *after* the accident occurred further supports, as reasonable, the trial court's factual determination that the accident, rather than Mr. Reed's recreational drug use, was the cause of the seizures.

"Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error." *Housley v. Cerise*, 579 So.2d 973, 979 (La.1991) (citing *Mart v. Hill*, 505 So.2d 1120 (La.1987)). It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Lirette v. State Farm Ins. Co.*, 563 So.2d 850, 852 (La.1990); *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989); *Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La.1978); *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973). The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. *Lirette*, 563 So.2d at 853. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

It is also well established that "a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct," and the trier of fact is responsible for determining what damages, if any,

were caused by the accident. *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La.1993).

Louisiana jurisprudence has also long recognized that when a person was in good health prior to an accident, and symptoms appear after the accident, that person's injuries are presumed to have resulted from the accident. *Housley v. Cerise*, 579 So.2d 973 (La.1991); *Bernard v. Hartford Insurance Co.*, 09-71 (La.App. 3 Cir. 6/3/09), 12 So.3d 1098, *writ denied*, 09-1524 (La. 10/9/09), 18 So.3d 1285; *Stoll v. Allstate Ins. Co.*, 11-1006 (La.App. 5 Cir. 5/8/12), 95 So.3d 1089; *Munch v. Backer*, 10-1544 (La.App. 4 Cir. 3/23/11), 63 So.3d 181; *Thomas v. Comfort Center of Monroe, LA, Inc.*, 10-494 (La.App. 1 Cir. 10/29/10), 48 So.3d 1228; *Edwards v. LCR-M Corp., Inc.*, 41,125 (La.App. 2 Cir.7/12/06), 936 So.2d 233. A plaintiff is entitled to this so-called *Housley* presumption of causation if three elements are met: 1) the person was in good health prior to the accident; 2) commencing with the accident, the symptoms of the disabling condition appeared and continuously manifested themselves afterwards; and 3) *there is a reasonable possibility* of a causal connection between the accident and the disabling condition. *Housley*, 579 So.2d at 980. The application of the *Housley* presumption of causation to the facts is a question of fact and subject to manifest error review. That presumption can only be overcome should the trier of fact conclude the plaintiff was not credible and the claimed injuries were not caused by the accident.

I find the facts in this case clearly warrant the application of the *Housley* presumption that the seizures were caused by the accident. Mr. Reed specifically testified he had never suffered a seizure prior to the accident, and experienced his first seizure a few days after the accident. His wife corroborated that testimony, and there was nothing in the record to dispute same. His documented medical history following the accident shows several trips to the emergency room complaining of continuing seizures, leading to his ultimate referral to Dr. Ugokwe.

Notably, Mr. Reed's seizures abated after being prescribed medication by Dr. Ugokwe. Moreover, Dr. Ugokwe's testimony specifically notes a head trauma, such as Mr. Reed suffered, could cause the onset of seizures. Thus, Mr. Reed more than established the *reasonable possibility* of a causal connection between the accident and his seizures. Mr. Reed was entitled to the presumption that the accident caused his seizures.

In conclusion, the record amply supports the trial court's award of the $20,816.00 in medical expenses incurred by Mr. Reed for treatment of his seizures. For the majority to hold otherwise is substituting its opinion for that of the trial court's, which is beyond the reach of appellate review. I believe a complete affirmance of the trial court's judgment is mandated in this case.

NUMBER 15-120

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

TYRON REED AND TINA REED,
INDIVIDUALLY AND ON BEHALF
OF HER MINOR CHILD,
TRENTEZ J. GILCHRIST

VERSUS

DONDI LACOMBE AND
STATE OF LOUISIANA,
DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS,
AVOYELLES CORRECTIONAL
CENTER

AMY, J., concurring in part and dissenting in part.

I agree with the majority that an affirmation of the award of general damages to Trentez Gilchrist is warranted. However, while I agree with the lead opinion that there is insufficient proof of causation to support the special damages award for Tyron Reed's seizure-related medical expenses, I would reverse the award of seizure-related expenses in its entirety. In my opinion, the facts of this case do not support the award of any expenses associated with that condition, even those for the emergency room visit of April 21, 2012.

Certainly, although a defendant is responsible for overtreatment or unnecessary medical treatment incurred by a plaintiff in good faith, that treatment still must be related to the accident. S*ee, e.g.*, *Marshall v. Boydston*, 09-1137 (La.App. 3 Cir. 3/17/10), 33 So.3d 438, *writ denied*, 10-881 (La. 6/25/10), 38 So.3d 339. In *Marshall*, this court awarded damages for two diagnostic procedures undergone by the plaintiff, noting, in part, that "there was no sufficient contradictory evidence or reasonable suspicion that these bills were not related to the accident[.]" *Id.* at 446. After considering the record in this matter, I conclude

that there is sufficient contradictory evidence to show that Mr. Reed's emergency room visit on April 21, 2012, was not related to the accident. Most notable in my opinion is that the only medical opinion offered revealed a "less than 25 percent" chance that the accident caused the seizure.

Similarly, although a defendant is liable for a tort victim's reasonable expenses incurred in seeking medical consultation or treatment in order to insure that the adverse effects of the occurrence will be minimized or prevented, my reading of the record does not support an application of that concept. *See Motorola, Inc. v. Associated Indem. Corp.*, 02-716 (La.App. 1 Cir. 6/25/04), 878 So.2d 824, *writs denied*, 04-2314, 04-2323, 04-2326, 04-2327 (La. 11/19/04), 888 So.2d 207, 211, 212 (citing *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70 (Lemmon, J., subscribing opinion.)). With regard to the facts of this case, the records from the April 21, 2012 visit reveal that the fact of Mr. Reed's motor vehicle accident was disclosed during the visit. However, I find nothing in those records that indicates that this initial seizure-related treatment was actually attributable to the accident or suspected of being related to the accident, unlike the factual scenarios in *Marshall* and *Motorola*. Rather, the medical records from the April 21, 2012 emergency room visit indicate a final impression of "seizure-like activity" and "polysubstance abuse."

Accordingly, for the above reasons, I respectfully concur in part and dissent in part.