STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-307

CALVIN JOSEPH GUIDRY, ET AL.

VERSUS

LAFAYETTE HEALTH VENTURES, INC., ET AL.

**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, DOCKET NO. 97171-C
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***

SYLVIA R. COOKS
JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, James T. Genovese, Shannon J. Gremillion and John E. Conery, Judges.

**REVERSED AND RENDERED.**


**Conery, J., concurs in the decision to reverse the jury's zero verdict and concurs in part and dissents in part on the damages awarded and assigns reasons.**

Thomas M. Daigle
711 Johnston Street
Lafayette, LA 70501
(337) 234-4049
**ATTORNEY FOR PLAINTIFFS/APPELLANTS**
    Calvin Joseph Guidry, Jr. and Kimberly Guidry

John R. Shea
John Shea & Associates
1817 West University
Lafayette, LA 70506
(337) 981-7432
**ATTORNEY FOR PLAINTIFFS/APPELLANTS**
    Calvin Joseph Guidry, Jr. and Kimberly Guidry

James T. Rivera
Scofield & Rivera LLC
P.O. Box 4422
100 E. Vermilion Street, Suite 301
Lafayette, LA 70502
(337) 235-5353
**ATTORNEY FOR DEFENDANTS/APPELLEES**
    Karl Credeur, Lafayette Health Ventures, Inc. and QBE Specialty Ins. Co.

**COOKS, Judge.**

On May 14, 2012, Calvin Joseph Guidry, Jr. was operating his 2004 Chevrolet pickup truck and traveling north on Louisiana Highway 339 at its intersection with the Louisiana Highway 14 By Pass in Erath, Louisiana. His sister, Kimberly Guidry, was a guest passenger. At the same time, Carolyn Borel was operating her 2008 Mercury Marquis and approaching the same intersection. When the light at the intersection turned green, both the Guidry vehicle and Borel vehicle began to pass through the intersection.

As the two vehicles proceeded, Karl Credeur, who was driving a 2006 Dodge Caravan owned by his employer, Lafayette Health Ventures, Inc. (hereafter LHV), ran the red light and collided with the Borel vehicle, which then collided with the Guidry vehicle. Mr. Credeur was in the course and scope of his employment with LHV at the time of the accident.

Both Calvin Guidry and Kimberly Guidry were allegedly injured as a result of the accident. Kimberly was taken from the scene by ambulance to Abbeville General Hospital. She complained of moderate pain in her lower back and knee pain. X-rays were performed; she was placed in a cervical collar; and she was prescribed medication. She was told to return if symptoms did not alleviate or if they worsened.

Kimberly subsequently sought treatment with Dr. Roland Miller, an orthopedic surgeon in Abbeville, complaining of constant back pain and some radiating pain into her legs. Dr. Miller ordered an MRI which showed a minimal L-5 annular bulge and a small focal right paracentral disc protrusion containing an annular fissure at L5-S1. Dr. Miller referred Kimberly to Dr. Mary Cory for epidural steroid injections.

3

Kimberly also sought treatment from Dr. David Wyatt, an orthopedic surgeon. Dr. Wyatt testified her initial complaints were low back, right hip, and knee pain. Dr. Wyatt believed the injections Kimberly received were to reduce the inflammation she suffered from arthritis. Dr. Wyatt noted Kimberly had pre-existing arthritis, but that her condition was aggravated by the injuries she suffered in the accident.

Kimberly also was treated by Dr. John Martin, who is an anesthesiologist and pain management specialist. He treated Kimberly based on her complaints of pain she attributed to the automobile accident.

Defendants had Kimberly examined by Dr. John Budden, an orthopedic surgeon. Dr. Budden had no objection to the radiologist's finding that Kimberly suffered from an L5-S1 disc condition with an annular tear. Dr. Budden opined that Kimberly suffered from pre-existing degenerative conditions in both her lumbar spine and her knee, but he felt these conditions were aggravated by the accident.

Kimberly and Calvin, filed a petition for damages based on the injuries they suffered as a result of the accident. Named as defendants were Mr. Credeur, LHV, and its liability insurer, QEB Specialty Insurance Company. It was asserted in the petition that damages were in excess of $50,000.00, thus entitling them to a jury trial. Prior to trial, Calvin settled his case against the defendants.

At the commencement of trial, it was stipulated that Mr. Credeur was in the course and scope of his employment at the time of the accident and was solely at fault in causing the accident. Defendants also stipulated to the authenticity of medical expenses of Kimberly in the amount of $26,244.22, but reserved their right to dispute causation.

4

At trial, Kimberly presented the deposition testimony of her treating physicians, Dr. Miller, Dr. Wyatt, and Dr. Martin. Defendants argued to the jury that Kimberly's doctors could not agree as to the source and/or recommended treatment for Kimberly's complaints of pain. Kimberly asserted claims for future medical expenses, as well as past and future wage loss.

Kimberly testified she was hurt in the accident, had pain as a result of the accident, and had not been in pain prior to the accident. Despite acknowledging pre-existing conditions in her back and knees, Kimberly maintained she was nevertheless not in pain prior to the accident. Kimberly's physicians testified in their depositions that the accident aggravated her pre-existing conditions.

Kimberly also called Glenn Hebert, a licensed vocational rehabilitation counselor. Mr. Hebert stated that Kimberly was not a candidate to return to work at this time, finding she was temporarily, totally disabled. Kimberly worked as a sitter, assisting elderly and/or infirmed patients in their home. He testified she would not likely be a candidate for work until she underwent corrective back surgery. Defendants presented the testimony of Ted Deshotels, also a vocational rehabilitation counselor, who disagreed with the findings of Mr. Hebert, stating he did not find a future loss of earnings capacity was warranted. He believed Kimberly could return to employment. On cross-examination, Mr. Deshotels noted it might be problematic for Kimberly to return to work, but premised that opinion on her cardiac condition rather than the injuries allegedly suffered in the accident.

In conjunction with Mr. Hebert's testimony, Kimberly presented the testimony of an economist, John Theriot, who stated, at the time of trial, she had past lost income of $40,764.00. Mr. Theriot noted the amount reached by Defendants' economist, who was not called at trial, was approximately $52,000.00.

Mr. Theriot also testified Kimberly's loss of future income was approximately $170,000.00.

At the conclusion of the three-day trial, the jury returned a verdict finding Kimberly was not entitled to any damages as a result of the accident. Kimberly subsequently filed a motion for new trial, contending the jury's verdict was clearly contrary to the evidence and law. The trial court, although noting the jury's verdict "was rather harsh," denied the motion for new trial. This appeal followed, wherein Kimberly asserts the following assignments of error:

> 1. The jury committed manifest error in finding that [she] was not injured in the motor vehicle accident made the cause of this lawsuit, and thus erred in failing to award damages.
>
> 2. The trial judge committed legal error in failing to grant [the] motion for new trial when all evidence was to the contrary, which all indicated that she was injured in the motor vehicle accident.

## ANALYSIS

This court recently in *Cole v. Allstate Insurance Co.*, 07-1046, p. 2 (La.App. 3 Cir. 6/5/08), 987 So.2d 310, 312, *writ denied*, 08-1463 (La. 10/31/08), 994 So.2d 535, discussed the appellate standard of review for factual determinations as follows:

> The standard of appellate review of a trial court's factual findings is well settled and has long been established in this state. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Our supreme court set forth a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *Earls v. McDowell*, 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242, citing *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La.1993). On appeal, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Id.* Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Earls, supra,* citing, *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

> An appellate court cannot shirk its duty of appellate review of fact by simply deferring to a trial court's factual determinations because its reasons for judgment are couched in terms of a credibility call. *Earls, supra,* citing, *Rogers v. City of Baton Rouge*, 04-1001 (La.App. 1st Cir. 6/29/05), 916 So.2d 1099, 1104, *writ denied*, 05-2022 (La. 2/3/06), 922 So.2d 1187. This Court has a constitutional responsibility to review the entire record and to determine whether, as a whole, it supports the judgment rendered by the trial court. *Earls, supra,* citing, LSA-Const. Art. 5, section 10(B); *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742.

> Proof by a preponderance of the evidence is defined as taking the evidence as a whole, the fact to be proved is more probably than not. *Earls, supra,* citing, *Fuller v. Wal-Mart Stores, Inc.*, 519 So.2d 366 (La.App. 2nd Cir.1988). Uncontroverted evidence should be taken as true to establish a fact for which it is offered absent any circumstances in the record casting suspicion as to the reliability of this evidence and sound reasons for its rejection. *Id.*

*Boxie v. Smith-Ruffin*, 07-264, pp. 3-4 (La.App. 5 Cir. 2/6/08), 979 So.2d 539, 545.

Kimberly argues she was entitled to a presumption that her injuries were caused by the accident. Defendants counter that the evidence reveals Kimberly was not in good health prior to the accident, and thus, any current injuries cannot be presumed to be caused by the accident. Louisiana jurisprudence has long recognized that when a person was in good health prior to an accident, and symptoms appear after the accident, that person's injuries are presumed to have resulted from the accident. *Housley v. Cerise*, 579 So.2d 973 (La.1991); *Bernard v. Hartford Ins. Co.*, 09-71 (La.App. 3 Cir. 6/3/09), 12 So.3d 1098, *writ denied*, 09-1524 (La. 10/9/09), 18 So.3d 1285; *Stoll v. Allstate Ins. Co.*, 11-1006 (La.App. 5 Cir. 5/8/12), 95 So.3d 1089; *Munch v. Backer*, 10-1544 (La.App. 4 Cir. 3/23/11), 63 So.3d 181; *Thomas v. Comfort Ctr. of Monroe, LA, Inc.*, 10-494 (La.App. 1 Cir. 10/29/10), 48 So.3d 1228; *Edwards v. LCR-M Corp., Inc.*, 41,125 (La.App. 2 Cir.

7

7/12/06), 936 So.2d 233. A plaintiff is entitled to the application of the *Housley* presumption of causation if three elements are met: 1) the person was in good health prior to the accident; 2) commencing with the accident, the symptoms of the disabling condition appeared and continuously manifested themselves afterwards; and 3) there is a reasonable possibility of a causal connection between the accident and the disabling condition. *Housley*, 579 So.2d 973. The evidence does not establish Kimberly was in "good health" prior to the accident. She had pre-existing conditions involving her back, knee, and heart. Further, many of the symptoms, which Kimberly argues only occurred after the accident, the record shows existed, albeit to some lesser degree, prior to the accident. The medical experts in this case, even the ones called by Kimberly, testified she sustained an "aggravation" to conditions which predated the accident. Under the circumstances, at least two of the three elements required for the *Housley* presumption were not established by Kimberly, and application of the presumption in this case is not appropriate.

Of more relevance in this case is the well-established principle that "a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct," and the trier of fact is responsible for determining what damages, if any, were caused by the accident. *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La.1993). As will be set out in detail, the medical testimony in this case was unequivocal that Kimberly suffered an aggravation of pre-existing conditions as a result of the accident in question. Thus, under the law, such an aggravation is compensable, and the jury erred in wholly disregarding the testimony of all the doctors in this case who concurred that Kimberly suffered such an aggravation as a direct result of the accident.

8

Kimberly notes all three physicians who treated her, Dr. Martin, Dr. Wyatt, and Dr. Miller, agreed the problems she complained of arose out of or were aggravated due to the accident in question. Of even greater significance, Kimberly points out that Dr. Budden, the doctor who Defendants hired to examine her, also found the accident caused an aggravation of her pre-existing problems. While being asked his opinion by counsel for Defendants, Dr. Budden stated:

> From reviewing all the reports I had, the x-rays, examining the patient, I think she possessed some pre-existing degenerative changes affecting her lumbar spine and affecting her knee, which is common for a person in her mid forties to late forties; that's a common finding. And I don't think that the accident caused any structural damage to either of those two areas, but *I think it aggravated the underlying arthritic changes that those areas possessed*. (Emphasis added).

Dr. Budden went on to state that, with appropriate treatment, such symptoms will normally respond favorably within six months time. Later in his testimony, Dr. Budden specifically stated he "believed that she did injure her right knee . . .[, that] she contused the knee and she probably aggravated the underlying degenerative arthritis. . . ." He noted the knee problems, similar to the back problems, "should have responded" within six months. Dr. Budden also stated "the treatment recommendations [by Dr. Miller] were timely and warranted." Dr. Miller's treatment recommendations included placing Kimberly in physical therapy and ordering two epidural steroid injections. Dr. Budden disagreed, however, with Dr. Wyatt's recommendation to perform rhizotomies on Kimberly, finding it was unnecessary, as the lumbar MRI did not show any pressure on any of the nerve roots.[1]

Defendants point to the fact that Kimberly, in the history she provided to Dr. Budden, did not disclose past problems with her back and knees, including being

---

[1] A rhizotomy is a medical procedure that involves killing a nerve with a radio frequency tool to lessen the patient's pain.

involved in an accident approximately twenty years ago. While this failure may have influenced the jury's assessment of Kimberly's credibility, we note Dr. Budden's medical conclusions were made with full knowledge of these pre-existing problems.

Defendants argue that Kimberly's credibility, or lack of credibility, was the key factor which moved the jury to find she sustained no damages as a result of the accident. It may very well be true the jury relied entirely on Kimberly's lack of credibility, as suggested by the defense, in rejecting her claims altogether. But "credibility determinations" alone do not preclude a review of the jury's verdict on appeal. We must determine whether the proven facts in evidence provided a reasonable basis for the jury's verdict.

There is no question that an accident occurred involving a vehicle in which Kimberly was riding as a guest passenger. Calvin Guidry testified the vehicle he was driving, and in which Kimberly was riding in as a guest passenger, was struck by the Borel vehicle after it collided with the vehicle driven by Mr. Credeur. Damage to the Guidry vehicle was incurred from the middle of the bumper all the way to the passenger side of the vehicle. The estimate in the record revealed the vehicle sustained approximately $2,200.00 in damages. The pictures established the majority of the damage to the vehicle occurred on the passenger side, which was the side Kimberly was seated. The bumper also had to be pried from the tire to make the vehicle drivable. Kimberly was taken from the scene by ambulance to the Abbeville General Hospital emergency room, complaining of pain in her lower back and knee.[2]

---

[2] We note Calvin was determined to have suffered injuries as a result of the accident, such that Defendants settled their claims with him. However, Kimberly, who was riding in the same vehicle, essentially was not allowed any recovery by the jury, not even the ambulance ride to the emergency room.

All the medical evidence supports a finding that Kimberly's pre-existing conditions were aggravated as a result of the accident. The jury's zero damages award under these circumstances was not reasonable nor is it legally sustainable. The jury therefore was manifestly erroneous and clearly wrong in finding Kimberly was not entitled to any damage award.

Because the validity of the lower court judgment is interdicted by error, we must perform an independent de novo review of the complete record and exercise our own discretion in fixing the appropriate general and special damages awards for the injuries sustained by Kimberly. *Suhor v. Gusse*, 388 So.2d 755 (La.1980).

*I. General Damages.*

In her petition, Kimberly asserted a claim for general damages for her pain and suffering. General damages include pain and suffering, inconvenience, the loss of physical enjoyment, and other losses of life or lifestyle that cannot be definitively measured in monetary terms. *McGee v. A C AND S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770; *Montgomery v. Opelousas Gen. Hosp.*, 546 So.2d 621 (La.App. 3 Cir.1989). "There is no mechanical rule for determining general damages and the facts and circumstances of each case must control." *Bailey v. LeBlanc*, 14-267, p. 8 (La.App. 3 Cir. 11/12/14), 151 So.3d 1004, 1012, *writ denied*, 14-2594 (La. 3/6/15), 162 So.3d 372.

As discussed above, we find the record sufficiently establishes Kimberly suffered an aggravation of her pre-existing problems as a result of the accident. This conclusion was unanimous among all the physicians who treated or examined Kimberly. The extent and severity of this aggravation, however, was very much in dispute. The evidence established there were many inconsistencies in the complaints voiced by Kimberly to her physicians and the testimony given at trial. The record also shows Kimberly, when asked by Dr. Budden, did not acknowledge

11

her pre-existing problems with her back and knee. Further, Kimberly also discontinued her physical therapy on her own without notification to her physicians. She maintained she stopped because the physical therapy sessions were making her symptoms worse, but Dr. Wyatt's records indicate she stated the sessions provided her some short-term relief.

Considering the evidence in the record, we accept Dr. Budden's conclusions that Kimberly sustained aggravating injuries to her knee and back which should have resolved in six months. She also endured two steroid injections, took pain medication and underwent physical therapy, all of which Dr. Budden agreed were warranted.

Based on our review of similar awards, we award Kimberly $25,000.00 in general damages. Compare *Joseph v. Archdiocese of New Orleans*, 10-659 (La.App. 4 Cir. 11/10/10), 52 So.3d 203 (general damages award of $30,000.00, with $15,000.00 in medical expenses, for plaintiff who received treatment for soft tissue injuries to his back and neck for approximately six months; the plaintiff therein was also found to have "withheld information from his treating physicians" about "pre-existing back and neck injuries.") *Id*. at 205-06; *Clement v. Carbon*, 13-827 (La.App. 5 Cir. 4/9/14), 153 So.3d 460 (general damages award of $30,000.00, with $9,434.00 in incurred medical expenses, to a man who received seven months treatment for his lower back problems following an automobile accident, as well as receiving treatment for neck problems); *Nusloch v. Browning-Ferris Servs., Inc.*, 97-528 (La.App. 5 Cir. 11/25/97), 703 So.2d 794 (general damages award of $50,000.00, with $9,206.66 in past medicals, for a plaintiff who suffered a neck and back strain, as well as an aggravation of her prior knee condition (which did result in arthroscopic surgery), and an eye injury resulting in uneven pupil sizes); *Jacobs v. City of Marksville*, 06-1386 (La.App. 3 Cir. 3/7/07),

953 So.2d 139, *writ denied*, 07-1093 (La. 9/14/07), 963 So.2d 999 ($35,000.00 general damages award to a man who suffered arm and leg pain, lower-back pain, and neck pain as a result of a motor vehicle accident, required one steroid injection and less than one month of physical therapy, and was treated for ten months for his injuries); *Waters v. Brookshire Grocery Co.*, 07-203 (La.App. 3 Cir. 11/7/07), 969 So.2d 1287 (general damages award of $30,000.00 to a woman who was treated for soft-tissue injuries to her knee, back, and neck for approximately nine months)

*II. Special Damages.*

When a plaintiff alleges that medical expenses were incurred "and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment." *Este v. State Farm Ins. Co.*, 96-99, p. 10 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 857. At trial below, Defendants stipulated to the authenticity of medical expenses of Kimberly in the amount of $26,244.22. Dr. Budden, Defendant's medical expert, also specifically testified he found the treatments performed "timely and warranted." Therefore, we award Kimberly the full amount of the stipulated past medicals of $26,244.22.

We find the record does not support Kimberly's request for future medical expenses for performance of the rhizotomies suggested by Dr. Wyatt. Dr. Budden specifically disagreed with Dr. Wyatt's recommendation to perform rhizotomies on Kimberly, finding it was unnecessary as the lumbar MRI did not show any pressure on any of the nerve roots. Dr. Miller offered no opinion on the necessity of rhizotomies or any future medical treatment. Dr. Martin, who was one of Kimberly's treating physicians, did not agree that rhizotomies were an appropriate

course of treatment. Therefore, we will not make any award for future medicals as that component of damages was not proven by Kimberly.

Kimberly also contends she is entitled to a claim for lost earnings. In order to recover actual wage loss, "a plaintiff must prove that he [or she] would have been earning wages but for the accident in question. In other words, it is the plaintiff's burden to prove past lost earnings and the length of time missed from work due to the accident." *Boyette v. United Servs. Auto. Assoc.*, 00-1918, p. 3 (La. 4/3/01), 783 So.2d 1276, 1279 (citations omitted). Kimberly's economist testified her yearly average earnings were $19,149.00. Thus, for the six months Kimberly was unable to work she is entitled to an award of $9,574.50 in lost earnings.

## DECREE

For the foregoing reasons, finding clear and manifest error in the jury's evaluation of the evidence at trial, we reverse the jury verdict in favor of Defendants and award Kimberly Guidry damages as follows: $9,574.50 for past lost wages, $26,244.22 for past medical expenses and $25,000.00 in general damages. All costs of this appeal are assessed against Defendants-Appellees.

**REVERSED AND RENDERED.**

14

CALVIN JOSEPH GUIDRY, JR., ET AL.

V.

LAFAYETTE HEALTH VENTURES, INC., ET AL.

**CONERY, J., concurs in the decision to reverse the jury's zero verdict and concurs in part and dissents in part on the damages awarded and assigns reasons.**

Cognizant of the latest Louisiana Supreme Court ruling on the manifest error issue,[1] I am nevertheless constrained to concur in the decision to reverse the jury's finding of no damages in this case. Defendants stipulated to liability. The automobile collision occurred on the passenger side where Ms. Guidry was sitting, and though relatively minor, the collision was sufficient to have caused some aggravation of Kimberly Guidry's pre-existing knee and back problems. Ms. Guidry's initial injury was corroborated by objective, independent evidence, including the collision damage report, the ambulance records, the emergency room records, and Dr. Miller's initial treatment report of May 18, 2012. I differ, however, as to some of the amounts the majority awarded to Ms. Guidry in its de novo review.

Defense counsel, in arguing for affirmation of the jury's zero verdict, pointed out numerous reasons why Ms. Guidry's complaints were contradicted by medical records and, at best, were exaggerated and not credible. I agree that many

---

[1]*Snider v. Louisiana Medical Mutual Insurance Company*, 14-1964 (La. 5/5/15), 169 So.3d 319.

of her complaints changed, were exaggerated and not credible. As an example, Ms. Guidry listed her pain scale as a "ten" in the E.R. records, yet she had no objective findings. The jury may not have believed she was hurt at all, which may explain the zero verdict. If there was no independent objective evidence to support Ms. Guidry's claim, I would agree that the jury's zero verdict was tantamount to a finding of no credibility on the part of Ms. Guidry and would affirm. As we stated in affirming the jury's zero verdict in *Dore v. Mitsui Sumitomo Ins., USA, Inc.*, 12-875 (La.App. 3 Cir. 5/22/13), 117 So.3d 231, *writ denied*, 13-1953 (La. 11/8/13), 125 So.3d 1094, "she said—we didn't believe."

However, it was uncontradicted that Ms. Guidry was struck on the passenger side of a vehicle and that the collision damages report indicated over $2,000.00 in property damages to the vehicle had occurred. Ms. Guidry was immediately taken by ambulance to the hospital following this documented automobile collision, and the E.R. doctors reported a diagnosis of lumbar strain and right knee sprain. X-rays of the low back and right knee were negative for swelling or any acute injury and showed only mild, early degenerative changes. Still there is at least some objective evidence to support Ms. Guidry's claim that she was injured in the wreck.

Based on the uncontradicted objective evidence of the collision, transportation by ambulance, and E.R. findings, the jury was manifestly erroneous in finding no damages were due. I further note that after discharge from the E.R., it was recommended by the E.R. doctor that Ms. Guidry follow-up with her own physician. I would agree that her initial follow up visit with Dr. Miller on May 18, 2012, four days later, is further evidence that she was injured, even though that visit was arranged by her attorney.

I note the majority agreed that Ms. Guidry had serious credibility problems and that after review of the entire record taken as a whole, the majority concluded that the record would not support an award beyond a six month aggravation of Ms. Guidry's pre-existing back and knee complaints. I suggest that is an overly generous finding based on this record. I would limit Ms. Guidry's general damages award and medical specials to the initial visit with Dr. Miller on May 18, 2012, four days after the accident, and his first follow up visit on July 18, 2012. Though there were few, if any, objective findings made by Dr. Miller, I would also find that there is a reasonable factual basis in the record to conclude that Ms. Guidry continued to have some accident related symptoms up to July 18, 2012, her first follow up visit with Dr. Miller. I would find that any further medical complaints by Ms. Guidry and medical tests and treatment arranged by Ms. Guidry's attorneys, as well as the costs of all medical expenses that were incurred following the July 18, 2012 visit with Dr. Miller would likewise not be compensable based on Ms. Guidry's complete lack of credibility.

The record plainly established that at Ms. Guidry's second visit with Dr. Miller on July 18, 2012, it was noted that she reported several complaints not previously reported and that she was sensitive to even the slightest touch on examination. At this point, there is a reasonable factual basis in the record to support the jury's finding that Ms. Guidry was not credible and the record as a whole would support the position that she is not entitled to any further award of damages beyond July 18, 2014. *See Bailey v. LeBlanc*, 14-267 (La.App. 3 Cir. 11/12/14), 151 So.3d 1004, *writ denied*, 14-2594 (La. 3/6/15), 162 So.3d 372.

We held in *Marshall v. Boydston,* 09-1137 (La.App. 3 Cir. 3/17/10), 33 So.3d 438, *writ denied*, 10-881 (La. 6/25/10), 38 So.3d 339, that a victim was

entitled to receive reasonable medical expenses in seeking medical consultation and treatment following an accident, assuming the consultation was made in good faith. *See also Reed v. LaCombe*, 15-120 (La.App. 3 Cir. 7/29/15), 172 So.3d 679. It should be noted that in *Reed*, Judge Amy filed a dissent on the issue of the award of a victim's reasonable expenses in "seeking medical consultation or treatment in order to insure that the adverse effects of the occurrence will be minimized or prevented." *Id.* at 687. Judge Amy found on record review in that case that nothing in the record indicated that the plaintiff's "seizure-related treatment was actually attributable to the accident or suspected of being related to the accident, unlike the factual situation in *Marshall* [*v. Boydston,* 09-1137 (La.App. 3 Cir. 3/17/10), 33 So.3d 438, *writ denied*, 10-881 (La. 6/25/10), 38 So.3d 339.]" *Id.* at 687. The majority disagreed and awarded minimal damages for "seizure-related treatment" in *Reed*, finding that the treatment was sought in good faith.

Likewise, I agree that in this case that the ambulance transport, the E.R. visit and the initial visit and first follow up visit with Dr. Miller are compensable. But as we said in *Dore*, 117 So.3d at 237, and again in the concurring opinion in *Bailey,* 151 So.3d at 1015, "just because evidence of medical treatment was presented, it does not necessarily follow that the jury is required to conclude that the medical treatment was caused by the accident. Credibility calls are for the jury to decide."

As in *Bailey,* I would find that there is a reasonable factual basis in the record in this case for the jury to conclude that Ms. Guidry's continuing complaints of pain and her continued treatment therefor on and after July 18, 2012 were either exaggerated and not credible, or were unrelated to the collision. *See Bailey*, 151 So.3d 1004.

I therefore disagree with the majority that we should award all past medical expenses incurred. Defense counsel stipulated only to the authenticity of the medical expenses, not causation. I would award only the ambulance charges, E.R. charges, Dr. Miller's initial and follow-up visit, and pharmacy bills for the first prescription. I agree with the majority's decision to exclude future medical expenses.

I further disagree with the majority's decision to award six months loss of wages totaling $9,574.50. I would limit the wage loss to July 18, 2014, the first follow up visit with Dr. Miller when Ms. Guidry's "new" and somewhat contradictory complaints were noted. I agree with the majority's decision to deny future wage loss and loss of earning capacity.

I would further limit the general damage award to a two month time period ending on July 18, 2014 when Ms. Guidry's symptoms changed dramatically. *See Dore,* 117 So.3d 231; concurring opinion in *Bailey*, 151 So.3d 1004.

I would find that a reasonable sum for Ms. Guidry's pain and suffering, considering all of her credibility problems, would be $6,000.00 for the aggravation of her pre-existing right knee and back complaints over the time period from the date of the accident May 14, 2012 through July 18, 2012, when her "symptoms" and "complaints" were especially suspect.

## CONCLUSION

In summary, I concur with the majority's decision to reverse the jury's zero verdict. I would render judgment on de novo review as follows:

|                              |              |
|------------------------------|-------------:|
| Past Medical Expenses[2]      | $4,322.65    |
| Past Wage Loss[3]             | $4,374.04    |
| Pain and Suffering           | $6,000.00    |
|                              | _____ |
| Total                        | $14,696.69   |

I would render judgment in favor of Ms. Kimberly Guidry against defendants, Karl Credeur, Lafayette Health Ventures, Inc., and QBE Specialty Insurance Company, jointly, severally, and in solido in the amount of $14,696.69, plus legal interest from date of judicial demand. In its application for rehearing, Defendants brought to the court's attention that an offer of judgment in the amount of $100,000.00 had been made at some point prior to the trial. Pursuant to La.Code Civ.P. art. 970, costs, exclusive of attorney fees, must be assessed to Ms. Kimbery Guidry. Louisiana Code of Civil Procedure Article 970 provides:

> If the final judgment obtained by the plaintiff-offeree is at least twenty-five percent less than the amount of the offer of judgment made by the defendant-offeror or if the final judgment obtained against the defendant-offeree is at least twenty-five percent greater than the amount of the offer of judgment made by the plaintiff-offeror, the offeree must pay the offeror's costs, exclusive of attorney fees, incurred after the offer was made, as fixed by the court.

I would, therefore, remand to the district court for the limited purpose of establishing the amount of the credit/offset owed pursuant to La.Code Civ.P. art. 970, and assess all costs of this appeal to Ms. Kimberly Guidry. *See Sher v. Lafayette Ins. Co.*, 07-2441 (La. 4/8/08), 988 So.2d 186.

---

[2]05-14-12 – Acadian Ambulance $1,106.50
05-14-12 – ER Treatment Abbeville General Hospital $1,601.38
05-18-12 – 07-18-12 – Dr. Ronald Miller $1,250.00
06-12-12 – Laborde Diagnostics $80.00
05-14-15 – 07-18-12 – Cashway Pharmacy $284.77

[3]Annualized earnings of $26,244.22 x 2/12 months or 1/6 = $4,374.04